IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief January 10, 2007

COUNTY OF SHELBY, A Political Subdivision of the State of Tennessee v.
JOHN R. TOMPKINS, ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-04-1691-3     D.J. Alissandratos, Chancellor

No. W2006-01433-COA-R3-CV - Filed July 12, 2007

In this administrative appeal, a Shelby County firefighter challenges the judgment of the lower court reinstating the Fire Department's decision to terminate his employment for a conceded violation of the county residency requirement set forth in the Shelby County Charter. The Shelby County Civil Service Merit Board (Merit Board) had modified the Fire Department's sanction from termination to suspension without pay for the time of suspension already served. The trial court, however, ruled that the Merit Board exceeded its authority by failing to heed the Shelby County Charter's provision mandating termination. The Appellant argues that the Charter does not mandate termination; that, even if it does, he had moved back to Shelby County at the time of his termination and should not have been discharged; and that, alternatively, he is entitled to a remand to advance an equal protection argument because he was unfairly prevented from doing so in the lower court. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and
Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Mark Antonio Allen, Memphis, Tennessee, for the appellant, John R. Tompkins.

Dedrick Brittenum and Allison Kay Moody, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

OPINION

Mr. John R. Tompkins (Mr. Tompkins) challenges his termination from the Shelby County Fire Department (the Department) for violation of the county residency requirement. Section 5.10 of the Shelby County, Tennessee, Charter (the Charter) provides as follows:

**Section 5.10. Residence of county official, employees and attorney qualifications required.**

A.  Any county official who shall voluntarily remove his or her residence outside the election district from which elected or appointed, shall forfeit that office immediately.

B.  Any lawyer appointed and employed by the county in a legal capacity, who is suspended or barred from the practice of law in the State of Tennessee, shall forfeit that office immediately.

C.  All employees must be residents of Shelby County at the time of appointment and shall continue to reside in said County as a condition of their employment, provided, however, this provision shall not apply to any employee working for Shelby County government on the effective date of this charter.

Shelby County, Tennessee, Charter § 5.10 (1986).

As set forth in the notice of proposed discipline issued on February 17, 2004, the Department charged Mr. Tompkins with willful disregard for lawful orders, intentional failure to follow instructions, and violation of the Charter residency requirement. The three citations referred only to Mr. Tompkins's location of residence. Hired as a firefighter for the Shelby County Fire Department in 1990, Mr. Tompkins admits that he knowingly violated the residency requirement when he moved to another county and lived there for approximately six or seven years. He moved back to Shelby County on February 20, 2004, four days before his pre-termination hearing and three days after the Department issued the charges against him.[1]

Following a pre-termination hearing on February 24, 2004, the Department issued its written decision on March 2, 2004, finding Mr. Tompkins guilty of the violations and terminating his employment immediately. Mr. Tompkins appealed his termination to the Shelby County Civil Service Merit Board (Merit Board), which upheld the Department's finding of violation but modified the discipline from termination to suspension without pay for the time Mr. Tompkins had already been out of work. [In its written decision, the Merit Board noted that the charter provision did not dictate any specific disciplinary measure, as compared to the other two provisions pertaining to county officials and county attorneys.] The transcript of the Merit Board proceedings reveals that one member of the panel had drafted the Charter's residency provisions and suggests that the board based its decision, at least in part, on the drafter's interpretation of the provision. Rather than finding

_____

[1]Neither the Shelby County Civil Service Merit Board (Merit Board) nor the lower court made any specific finding as to Mr. Tompkins's February 20, 2004, move to Shelby County. The Merit Board merely required him to prove compliance within thirty (30) days, and the lower court found his renewed compliance irrelevant because the violation could not be cured. The County apparently does not dispute the fact of Mr. Tompkins's move, as it states that "Appellant moved back to Shelby County and was once again a resident of Shelby County on or before February 20, 2004."

that Mr. Tompkins was again in compliance with the residency requirement, the Merit Board required him to prove compliance within thirty (30) days.

The County petitioned for a writ of certiorari in the chancery court, where a hearing on the matter occurred on May 30, 2006. The trial court ruled that the Charter mandated termination for residency requirement violations; that Mr. Tompkins did violate the requirement; and that the violation could not be cured in any event, thus rendering his compliance status at that time irrelevant. Finding that the Merit Board had exceeded its authority by contravening a Charter requirement, the trial court reversed the modification and reinstated the Department's decision to discharge Mr. Tompkins.

Seeking reinstatement of the Merit Board's decision, Mr. Tompkins argues that the Charter provision does not mandate the termination of employment. He further submits that even under the lower court's interpretation requiring termination, the court erred because he was again residing in Shelby County at the time of his termination. Alternatively, Mr. Tompkins requests a remand so that he can present evidence and argument pertaining to an alleged equal protection violation; he asserts on appeal that the lower court and the Merit Board unduly restricted his ability to advance this claim and that this improper restriction justifies a remand.

### *Subject Matter Jurisdiction*

By motion and appellate argument, Mr. Tompkins argues that this Court lacks subject matter jurisdiction because the Merit Board's written final decision was omitted from the administrative record and from the record on appeal to this Court. Tennessee Code Annotated Section 4-5-322(d) requires the agency to transmit to the reviewing court the "entire record of the proceeding under review." Tenn. Code Ann. § 4-5-322(d)(2005). In this case, the Merit Board omitted its written decision from the otherwise complete record, including the hearing transcript and various exhibits, it transmitted to the chancery court.

Mr. Tompkins's point raises concerns not about jurisdiction to hear the case, but about the impediment to judicial review posed by an incomplete administrative record. Common shortcomings of administrative records include an insufficiently developed record and an incomplete one due to a transmission oversight. For example, the agency may have failed to make particular findings of fact or conclusions of law, thus rendering judicial review impossible. Much of the case law cited by Mr. Tompkins addresses this type of inadequacy. Or, as in this case, the agency may have rendered a sufficiently detailed decision but neglected to transmit it to the reviewing court. The usual remedy for an agency's transmission of an incomplete record is a remand to the lower court. *See, e.g., Levy v. State Bd. of Exam'rs for Speech Pathology and Audiology*, 553 S.W.2d 909, 912 - 913 (Tenn. 1977); *Kendrick v. City of Chattanooga Firemen's and Policemen's Ins. and Pension Fund Bd.*, 799 S.W.2d 668, 669 (Tenn. Ct. App. 1990); *Shelby County Sheriff v. Shelby County Civil Serv. Merit Bd.*, Shelby Equity No. 24, 1990 WL 84577, at *3 (Tenn. Ct. App. 1990)(*no perm. app. filed*). *But see Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 668

(Tenn. 1977); *Goins v. Univ. of Tenn. Mem'l Research Ctr. and Hosp. at Knoxville*, 821 S.W.2d 942, 945–46 (Tenn. Ct. App. 1991).

Shelby County is a home rule jurisdiction, and we acknowledge that Tennessee Code Annotated Section 27-9-114(a)(2) exempts the Merit Board from the Uniform Administrative Procedures Act (UAPA) contested case hearing procedures, which include specific requirements regarding final orders and their contents. *See* Tenn. Code Ann. § 27-9-114(a)(2)(2000 & Supp. 2006) (providing that the contested case hearing procedures "shall not apply to . . . civil service boards of counties organized under a home rule charter form of government"). Nonetheless, a reviewing court must have sufficient information regarding the agency action to determine whether that action comports with the law and to avoid substituting its judgment for that of the administrative tribunal.

Importantly, the disputed issue under review is a narrow one of pure law, and there are no disputed material facts. Neither party disputes what the Merit Board decided or why it did so, and the chancellor considered these factors in reviewing the case. Mr. Tompkins failed to object to this omission in the lower court and even includes and cites to the Merit Board's written decision in his appellate brief. The board's decision conveyed no findings of fact or other information unknown to the lower court that could have impacted its ruling. There is no question that the Merit Board rendered a final decision subject to appellate review; that the lower court had before it all relevant information pertaining to that decision; and that this Court has subject matter jurisdiction over the matter.

Although the Merit Board was required to transmit its final decision as part of the administrative record, we believe the unusual circumstances of this case, as noted above, justify resolving this dispute without a remand. Neither party suffers prejudice in this instance, and to proceed otherwise would delay matters further without any corresponding benefit. We adopt the reasoning of the Tennessee Supreme Court from a similar case it decided under a previous formulation of the UAPA:

> [s]ince all of this evidence was apparently considered by the Chancellor, and since no mention was made in the chancery court of the omission of the final order itself, we are of the opinion that appellant has waived this procedural irregularity and that no useful purpose would now be served by our remanding the case to the chancery court, with directions that the Commission supply a copy of the order for the record.

*Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977). Accordingly, we now turn to the substantive issues raised by the parties on appeal.

### *Issues Presented and Standard of Review*

Mr. Tompkins argues that the lower court erroneously reversed the Merit Board's modification based upon an incorrect interpretation of the residency requirement in the Charter. He accordingly presents two issues for review, as restated below:

(1)     Whether Shelby County Charter §5.10(C) mandates specifically and unequivocally that county employees found to reside outside Shelby County must be terminated; and

(2)     Whether this case should be remanded to allow [Mr. Tompkins] to present evidence and argument showing his termination violated equal protection.

Shelby County, on the other hand, phrases the issues as follows:

(1)     Whether the chancery court properly held that the Shelby County Civil Service Merit Board exceeded its authority by modifying [Mr. Tompkins's] termination;

(2)     Whether the residency requirement . . . is a mandatory condition placed on employment in the county; and

(3)     Whether termination of employment is the appropriate remedy for violation of the residency requirement in the Code of Shelby County, Tennessee.

Tennessee Code Annotated Section 27-9-114 extends judicial review to civil service board proceedings that affect the employment status of civil servants. *See* Tenn. Code Ann. § 27-9-114 (2000 & Supp. 2006); *Tidwell v. City of Memphis,* 193 S.W.3d 555, 559 (Tenn. 2006).[2]  This Code provision requires compliance with the judicial standards of review set out in the Uniform Administrative Procedures Act (UAPA), as codified at Tennessee Code Annotated Section 4-5-322. Tenn. Code Ann. § 27-9-114(b)(1).  Under the UAPA, administrative agency decisions are subject to nonjury review in chancery court, with a scope limited to the administrative record.  Tenn. Code Ann. § 4-5-322(g) (2005 & Supp. 2006) (providing, however, that review of procedural errors need not be limited to the administrative record).  Subsection (h) specifies the scope of judicial review as follows:

> (h)  The court may affirm the decision of the agency or remand the case for
> further proceedings.  The court may reverse or modify the decision if the rights of the

---

[2]Shelby County sought review by filing a "Petition for Writ of Certiorari," which no longer applies to judicial review of cases within the scope of Tennessee Code Annotated Section 27-9-114. *See Tidwell v. City of Memphis,* 193 S.W.3d 555, 559 (Tenn. 2006)(noting that a 1989 amendment to this chapter supplanted the more limited scope of the common law writ of certiorari with the broader standards of the UAPA.)  It did, however, identify the proper Code sections in the body of its filing.

petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

      (1) In violation of constitutional or statutory provisions;

      (2) In excess of the statutory authority of the agency;

      (3) Made upon unlawful procedure;

      (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

      (5)(A) Unsupported by evidence which is both substantial and material in the light of the entire record.

      (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2005 & Supp. 2006).

The pivotal issue on appeal requires this Court to interpret the Charter residency requirement. Statutory interpretation presents a question of law that this Court reviews under a *de novo* standard with no presumption of correctness. *Tidwell,* 193 S.W.3d at 559 (classifying statutory interpretation as a question of law). Accordingly, we independently construe this provision, without deference to the interpretations rendered by the Merit Board or the Chancery Court. *See id.*; *McNiel v. Cooper*, No. M2005-01206-COA-R3-CV, 2007 WL 969407, at *3 (Tenn. Ct. App. Mar. 30, 2007). When interpreting statutes, this Court seeks to give effect to the intent and purpose of the enacting body and to preserve the statute's intended scope. *See Sanders v. Traver*, 109 S.W.3d 282, 284 (Tenn. 2003) (citing *State v. Walls*, 62 S.W.3d 119, 121 (Tenn. 2001)). To ascertain intent, we begin with the statutory text and focus on the natural and ordinary meaning of the language within the context of the entire statute. *Calaway v. Schucker*, 193 S.W.3d 509, 513 (Tenn. 2005).

A *de novo* review in this case comports with the UAPA standard allowing for reversal where the administrative tribunal exceeds its authority or renders a decision contrary to statute. *See* Tenn. Code Ann. § 4-5-322(h)(2), (1) (2005). The Merit Board can affirm, revoke, or modify administrative decisions dismissing, demoting, or suspending for more than ten (10) days a classified employee of Shelby County. *See* 1971 Tenn. Priv. Acts 505–06. This considerable discretion, however, cannot supersede the provisions of the county Charter. *Fox v. Miles*, 164 S.W.3d 593, 598–99 (Tenn. Ct. App. 2004)(citing *State ex. rel. Atkin v. City of Knoxville*, 315 S.W.2d 115, 117 (Tenn. 1958)). If the Charter mandates the termination of employment for violation of the residency requirement, then the Merit Board exceeded its authority by contravening the Charter provisions. In that case, affirmance of the lower court's judgment is appropriate so long as Mr. Tompkins's constitutional argument does not result in a remand.[3]

---

[3]On the other hand, if the Charter does not mandate termination, our inquiry does not end there. The Fire Department still had a basis to terminate employment, and our analysis would then shift to county policies and procedures

(continued...)

## *Analysis*

### *Disciplinary Action for Charter Violation*

We agree with the trial court that Charter Section 5.10 (C) is "clear in and of itself." The provision states that employees "shall continue to reside in said County as a condition of their employment." Shelby County, Tenn., Charter § 5.10 (C) (1986). "Shall" is mandatory, not permissive, language. *See* Shelby County, Tenn., Charter § 5.03 (C). Mr. Tompkins argues that "condition of . . . employment" is vague and does not equate to mandatory termination. He further submits that because the provision specifies no disciplinary action but instead employs this vague phrase, the Charter's rule of liberal construction[4] should govern our interpretation and result in the construction conferring more authority and power to the county. That construction, he contends, is the one he advances: termination is not mandatory, and "condition of employment" allows the county to exercise its discretion in fashioning the proper disciplinary action.

We disagree. Although Section 5.10 (C) does not spell out the practicalities of enforcing its requirement, the plain language of the provision and, in particular, the phrase "condition of employment" makes it clear that one cannot retain employment with Shelby County if he or she is found to have maintained less than continuous residence within the county. The provision does not require compliance as a condition of active duty or a condition of compensation. Rather, it is a condition of employment: one is either employed or not employed. One suspended without pay is still employed. In short, we find Mr. Tompkins's interpretation unpersuasive and hold that the charter provision mandates only one sanction for this violation.

As previously noted, one member of the Merit Board stated that he participated in drafting these provisions and was familiar with their intent. The intent of a drafter of legislation is neither conclusive as to the statute's meaning nor binding on this Court. As the Tennessee Supreme Court quoted in *Levy v. State Board of Examiners for Speech Pathology and Audiology,*

---

[3] (...continued)
and to whether the Merit Board's modification comported with UAPA provisions. For example, even though (hypothetically) empowered to modify this disciplinary decision pursuant to the 1971 Private Acts, the board would still have to base its decision upon substantial and material evidence and could not modify Mr. Tompkins's sanction through an unwarranted exercise of discretion. After addressing the issues as raised by the parties, we ultimately find it unnecessary to address these secondary matters.

[4] Section 5.02 of the Charter provides, in pertinent part, that

[t]he charter shall be liberally construed to the end that, within the limits imposed by the charter and by the Constitution and the laws of the state, the county shall have all powers necessary and convenient for the conduct of its affairs, including all powers that counties may assume under the Constitution and laws of the state concerning county home rule.

Shelby County, Tenn., Charter § 5.02.

[i]t is a settled principle in the interpretation of statutes that even where there is some ambiguity or some uncertainty in the language used, resort cannot be had to the opinions of legislators or of others concerned in the enactment of the law, for the purpose of ascertaining the intent of the legislature.

*Levy*, 553 S.W.2d at 913 (quoting *Bowaters Carolina Corp. v. Smith*, 186 S.E.2d 761, 764 (S.C. 1972)). In that case, it also noted the following:

[m]embers of the legislature have no more right to construe one of its enactments retrospectively than has any other private person.

*Id.* (quoting *Cartwright v. Sharpe*, 162 N.W.2d 5, 12 (Wis. 1968)). In this case, we decline to accord determinative weight to the board's interpretation for two reasons. First, the text is clear. Second, the drafter's intent is persuasive authority only and provides little insight into the intent of the enacting body (here, the voting citizens of Shelby County).

Mr. Tompkins also argues that a comparison of subsection (C) to subsections (A) and (B) reveals that termination is not mandatory. He asserts that because (C) does not use the immediate forfeiture language used in (A) and (B), it is clear that "condition of employment" does not limit the county to the sole sanction of termination. Presumably, he concludes that if the requirement does not require immediate forfeiture of employment, that it contemplates discretion in whether or not to discharge the violator. Again, we disagree. We not only find the meaning of the operative subsection to be clear, but we also conclude that the immediate forfeiture language does not conflict with our interpretation of subsection (C). We are unpersuaded that this textual difference leads to the conclusion advanced by Mr. Tompkins.

The difference in terminology is not one of result, but of timing and process. Subsections (A) and (B) contain self-executing language that severs the principle/agent relationship upon occurrence of the stated violation, whereas subsection (C) requires some action on the part of the county before the agency is terminated. The particular circumstances addressed in the first two subsections justify this difference because they involve matters implicating the public welfare. For example, Subsection (B) reflects the need to sever the agency relationship with a disbarred attorney practicing law on behalf of the county and representing its legal interests, while Subsection (A) evinces the need to prevent "district shopping" in bids for elected office and to insure county officials will faithfully serve the districts that elect them to office. These examples support the resort to self-executing language. Subsection (C), on the other hand, applies broadly to all county employees who, despite moving outside the county, remain its agents until the county takes action to terminate them. Again, we believe the phrase "condition of employment" clearly requires the discharge of employees in violation of the residency requirement. This interpretation does not conflict with the meaning of subsections (A) and (B). The entirety of Section 5.10 addresses

violations that necessarily result in the termination of employment; however, subsections (A) and (B) employ self-executing language and an expedited method of severing the agency relationship due to the heightened public interest implicated by those violations.

Finally, Mr. Tompkins argues that termination was inappropriate in his case because he was again residing in Shelby County at the time of his termination. We emphasize that there is no dispute that Mr. Tompkins resided in another county at the time the Department filed charges against him. Given this fact, we agree with the lower court that his subsequent attempt to cure the violation was ineffectual. We accordingly affirm the lower court's ruling reinstating the Department's termination of Mr. Tompkins's employment. We now address Mr. Tompkins's alternative constitutional argument.

*Constitutional Question*

On appeal, Mr. Tompkins expands his argument to include a constitutional issue by arguing that the lower court and the board should have allowed him the opportunity to present argument and evidence pertaining to an equal protection violation. He appears to assert that the lower court's limitation was itself a constitutional violation, yet he cites no legal authority for this position. At the same time, he contends it is premature to delve into the merits of his equal protection argument and so offers no citations to authority for that, either.

As a preliminary matter, we believe it is fair to state that Mr. Tompkins did not raise the issue of an equal protection violation before the Merit Board. Mr. Tompkins's union representative served as his advocate before the Merit Board and attempted to present evidence of the Department's history of non-enforcement with respect to the residency requirement. The Board rejected some, but not all, of these attempts. Although Tennessee law generally permits agencies to consider this type of constitutional question, it does not require Mr. Tompkins to raise it at the agency level. *See Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 457 (Tenn. 1995); *Mack v. Civil Serv. Comm'n of the City of Memphis*, No. 02A01-9807-CH-00215, 1999 WL 250180, at *5–6 (Tenn. Ct. App. Apr. 28, 1999)(*no perm. app. filed*)(remanding for findings as to equal protection violation where employee raised the issue in the trial court). Yet, he must do so at the chancery level or waive it. *See id.; Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Our review of the pleadings and the transcript from the lower court reveals that Mr. Tompkins failed to articulate the elements, let alone the existence, of a constitutional violation in the lower court.

First, nothing pertinent to a constitutional argument appears in the lower court filings. In response to Shelby County's "Petition for Writ of Certiorari," Mr. Tompkins listed under the heading "Affirmative Defenses" merely that Shelby County had failed to state a cause of action upon which relief could be granted and was not entitled to the relief it sought. Second, counsel for Mr. Tompkins made no affirmative statements regarding this issue to the lower court. At the beginning of the hearing, the chancellor asked, "[i]s it fair to say that the narrow legal issue is whether or not the Civil

Service Merit Board exceeded its authority in relationship to what the county charter mandates?" Counsel for Mr. Tompkins concurred without mentioning any constitutional infirmities.

> That is exactly correct, your Honor.
>
> . . . .
>
> . . . . Our position is that the [Merit Board] did exactly what the charter said to do. And they did not exceed their authority. . . .
>
> . . . .
>
> . . . . [The Merit Board had before it] an employee who had been terminated by the Shelby County Fire Department, who was at the time of the hearing residing in Shelby County.
>
> . . . . So what the Shelby County Civil Service Merit Board, who acknowledged that at some point in time he was in violation of the charter and he did not live in Shelby County, . . . that no one else had ever been terminated for that reason, . . . .
>
> [It decided] to change the discharge in this case to a suspension, given the fact that [this] employee . . . [was] already in compliance with the charter [and] to give him 30 days to verify that he [was] in compliance.

Third, any references to the Department's history of non-enforcement appear to have been made in an effort to excuse Mr. Tompkins's knowing decision to violate the requirement. For example, in response to opposing counsel's statement that "[Mr. Tompkins] testified that he knew that he was in violation of the charter, and he did it intentionally,"counsel for Mr. Tompkins replied as follows:

> No disciplinary action had been taken on this before; no disciplinary action had been taken against any other county employee ever.
> . . . .
>
> [This] is in the record . . . in the transcript.
>
> . . . .
>
> For 26 years - - Chief - - testified that during the 26 years that he had been working for Shelby County, that he knew of no person that had ever been - -
>
> . . . .

- - disciplined. There was testimony unrebutted in the record that there were other employees, at least one other employee of the Shelby County Fire Department who the chief knew was living outside of the county and no action was taken against him, none whatsoever.

The chancellor responded:

> I understand. Your argument is that after this hearing, should this Court suspend your position, that they need to go out and fire all of these other people. I understand.
>
> . . . .
>
> . . . . I want to hear the legal argument for your client. If your argument is, Chancellor, they are selectively prosecuting . . . . And then the Court would go ahead and say, You know what, quit selectively prosecuting and go fire all of the other people, too. And that would be on your client's head so to speak, if he wants that argument. I really don't think that that is the argument that he wants to present. It is a legal argument that I want to hear. That is what we're here about . . . .
>
> Is there anything further? Normally [Shelby County would] have the last say, but I am extending you the opportunity. Right now it is getting worse.

Counsel for Mr. Tompkins promptly concluded his argument regarding the interpretation of Section 5.10 (C).

Mr. Tompkins never asserted an equal protection claim or affirmatively mentioned a constitutional violation in filings or during the hearings. He never requested permission to present more evidence. He instead urged that there was evidence in the record to support his assertion that Shelby County had never before enforced the provision. Standing alone, the substance of this contention does not amount to the raising of a constitutional issue. A selective enforcement claim requires a party to show "(1) the government has singled out the plaintiff for adverse regulatory or enforcement action while others engaging in similar activity have not been subject to the same type of action and (2) that the decision to prosecute them rests on an impermissible consideration or purpose." *421 Corp. v. Metro. Gov't of Nashville and Davidson County*, 36 S.W.3d 469, 480 (Tenn. Ct. App. 2000). Whether Mr. Tompkins articulated the first element is questionable. Further, even construed as liberally as possible, the filings and transcript contain no evidence or argument that touch upon the second element. Even in light of the trial court's response, the least offensive portion

of which includes an incorrect statement of the law[5], we cannot fairly say that Mr. Tompkins raised the issue at that time. Thus, he cannot raise it now for the first time. This issue is waived.

Because the Charter residency requirement mandates the termination of employment when an individual has violated it, we hold that the Merit Board exceeded its authority when, in contravention of this provision, it modified Mr. Tompkins's sanction from termination to suspension without pay. Moreover, Mr. Tompkins has waived the equal protection issue by failing to raise it in the lower court; we therefore must deny his request for a remand. Accordingly, we affirm the lower court's judgment reinstating the Department's decision to discharge Mr. Tompkins. Costs of this appeal are taxed to Mr. John R. Tompkins and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[5]If an aggrieved party successfully challenges agency action as an unconstitutional application of law, the UAPA allows for reversal of the agency's action. We are hard pressed to imagine a remedy affirming an unconstitutional termination of employment and enjoining the agency to effect other terminations.