IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 28, 2011 Session

## SWIFT ROOFING, INC. v. STATE OF TENNESSEE, COMMISSIONER OF LABOR AND WORKFORCE DEVELOPMENT

Direct Appeal from the Chancery Court for Davidson County
No. 09-1444-I    Claudia Bonnyman, Chancellor

No. M2010-02544-COA-R3-CV - Filed July 13, 2011

This appeal arises from a petition seeking judicial review of an administrative agency order, which affirmed citations for workplace safety violations. The Chancery Court affirmed the citations. After reviewing the appellate record, we conclude that the administrative agency did not provide the required findings of fact, conclusions of law, and reasons for its decision. Consequently, judicial review is not possible based on the record before this Court. Therefore, we vacate the order of the Chancery Court and remand for further proceedings consistent with this opinion.

Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Vacated
and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Charles J. Mataya and Shana G. Fonnesbeck, Nashville, Tennessee, for the appellant, Swift Roofing, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; Warren A. Jasper, Senior Counsel, Daniel A. Bailey, General Counsel for appellee, State of Tennessee, Commissioner of Labor and Workforce Development.

## OPINION

On December 27, 2007, following an investigation into a workplace accident that resulted in the death of a worker, the State of Tennessee Department of Labor and Workforce Development, Division of Occupational Safety and Health ("TOSHA") cited Appellant,

Swift Roofing, Inc., for violations of TOSHA standards under 29 C.F.R. § 1926.501(b)(4)(i) (related to fall-protection measures), and under 29 C.F.R. § 1926.503(a)(1) (related to fall-safety training). On January 22, 2008, Swift Roofing filed a notice of contest of the citations, proposed penalty, and abatement with the TOSHA Review Commission ("Commission"). On January 29, 2008, Appellee, State of Tennessee Commissioner of Labor and Workforce Development, filed a complaint with the Commission requesting that the citations, penalty, and abatement requirements be affirmed.

On September 25, 2008, the parties filed the following joint stipulation of facts:

1.  Swift Roofing, Inc., . . . is an employer and has employees as defined in *Tennessee Code Annotated*, Sections 50-3-103(7) and 50-3-103(8), and is subject to the requirements of the Occupational Safety and Health Act ("Act") and the regulations issued or promulgated thereunder.

2.  In November 2007, [Swift Roofing] was contracted pursuant to two Purchase Orders to perform services for the Haywood Company. One of those PO's was to replace a 100 foot by 160 foot section of roof on Haywood Company's manufacturing facility at 751 Dupree Street, Brownsville, Tennessee 38012.

3.  The flat, built-up roof was 23 feet above a concrete floor and had domed skylight covers that measured 8 feet long, 4 ½ feet wide, 20 inches tall. These skylights were located in sections that were not consistently spaced between each other. The drawing attached hereto as Exhibit 1 accurately reflects the location of the skylights. The skylights were also being removed as part of the project. The plastic covers were to be removed, and these skylights were to be "roofed over."

4.  Prior to performing the roofing repair work, [Swift Roofing] erected a warning line around the 100 foot by 160 foot section of roof they were repairing. There were 6 "skylights" or "smoke hatches" within the 100 foot by 160 foot section of roof that was being repaired. The work being performed by the crews included the

-2-

hoisting, storage, application, and removal of roofing materials and equipment, including related insulation.

5. On November 4, 2007, [Swift Roofing's] employees were tearing off the old roof on the section being repaired. There were two five-man crews for a total of 10 total workers. One of the five-man crews [that] was tearing off the old roof includ[ed] the decedent, Donald Devinney. Five of the employees were engaged in tear-off work, with some using gasoline powered tear-off machines[] and spud bars to remove sections of the roof material. The other five employees were engaged in other activities, including one who was acting as Safety Monitor. The Safety Monitor does no other work; his responsibility is to watch and warn of the falling hazards. Under the PO, the skylights were going to be "roofed over," but the old material had to be removed first. Thereafter, the holes left by removal would be covered as part of the roofing project.

6. According to witnesses, Mr. Donald Devinney, an employee of [Swift Roofing], was crouched down pushing up on a section of old roof material while another employee was operating the tear-off machine. As he was pushing, the roof material broke loose and Mr. Devinney's upward and forward force caused him to stumble forward, and to his left, between 6 and 10 feet toward one of the skylights. His forward momentum caused him to fall onto the skylight breaking through the plastic dome cover. Mr. Devinney fell approximately 23 feet to the concrete floor below. He died the next day from his injuries.

7. The 6 skylights within the section of roof being repaired were neither covered nor barricaded. At the time of the accident, in addition to the warning line erected around the job site, [Swift Roofing] had an individual designated as a Safety Monitor on the roof. The [S]afety [M]onitor's job function was limited to observing the crew members' activities to assure safe work. He wore

a vest to designate his position as Safety Monitor, and he had received all of the training required under 29 C.F.R. § 1926.502(h) to perform the duties of a Safety Monitor.

8. [Swift Roofing's] Safety Program is administered by Chris Jordan of Construction Safety Consultants, Inc. [("CSC")] of Paducah, Kentucky. The program, which had been administered by CSC for about nine years prior to the accident, consists of employee training and worksite inspections. All employees are required to attend an OSHA 10-hour training course. The most recent OSHA 10-hour training course was conducted March 30, 2007. Weekly safety meetings are conducted on all job sites by the Foreman.

9. At the time of the accident Mr. Devinney had been employed with [Swift Roofing] a little less than 2 months, having been hired on September 17, 2007. At the time he was hired, he was drug tested and received new hire orientation. The results of the pre-employment drug test were negative for illegal drugs. Due to the timing of the annual OSHA 10-hour training course, Mr. Devinney had not yet received the course. However, he did participate in weekly job-site safety meetings conducted by the crew Foreman[,] and the Superintendent of the job had personally talked with the victim about fall protection. The victim had even helped set up the warning lines on the last job he worked.

10. A post-accident drug test was administered to Mr. Devinney. He tested positive for the presence of [] illegal drugs, including cocaine. [Swift Roofing] had no prior knowledge of Mr. Devinney's illegal drug use. On the day of the accident, however, Mr. Devinney did not appear to be impaired.

11. As a result of TOSHA's investigation of this accident, a citation was issued to [Swift Roofing] on December 27, 2007, for violations of the following TOSHA standards:

• 29 C.F.R. § 1926.501(b)(4)(i) - Each
employee on walking/working surfaces shall be
protected from falling through holes (including
skylights) more than 6 feet (1.8 m) above lower
levels, by personal fall arrest systems, covers, or
guardrail systems erected around such holes.

• 29 C.F.R. § 1926.503(a)(1) - The employer
shall provide a training program for each
employee who might be exposed to fall hazards.
The program shall enable each employee to
recognize the hazards of falling and shall train
each employee in the procedures to be followed
in order to minimize these hazards.

Based on these stipulated facts, the parties filed cross-motions for summary judgment
on September 25, 2008. Swift Roofing argued, *inter alia*, that: (1) the citation for violation
of 29 C.F.R. § 1926.501(b)(4)(i) was in error because the type of work that Swift Roofing
was performing at the time of the accident was roofing work on a low-slope roof, which is
addressed by 29 C.F.R. § 1926.501(b)(10)[1]; and (2) the citation for violation of 29 C.F.R. §
1926.503(a)(1) was in error because Swift Roofing's safety training program met the
regulatory requirements, and the deceased had personally received sufficient training.

A hearing was held before the Commission on June 3, 2009. The parties requested
that the matter be heard solely upon the stipulated facts and the submitted motions for
summary judgment and memoranda of law. Therefore, neither evidence, nor arguments were
considered at this hearing. Upon oral vote, the three members of the Commission
unanimously denied Swift Roofing's motion for summary judgment and granted Appellee
summary judgment, thus affirming the citations. As relevant here, after granting Appellee
summary judgment, the Chairman of the Commission, stated for the record as follows:

---

[1]29 C.F.R. § 1926.501(b)(10) provides that:

Except as otherwise provided in paragraph (b) of this section, each employee engaged in
roofing activities on low-slope roofs, with unprotected sides and edges 6 feet (1.8 m) or
more above lower levels shall be protected from falling by guardrail systems, safety net
systems, personal fall arrest systems, or a combination of warning line system and guardrail
system, warning line system and safety net system, or warning line system and personal fall
arrest system, or warning line system and safety monitoring system. Or, on roofs 50-feet
(15.25 m) or less in width . . . , the use of a safety monitoring system alone [i.e., without the
warning line system] is permitted.

And due to the fact that we decided these on briefs, I don't see any point of us going into a long explanation of how the decision was made. We simply feel and have – I don't mean to speak for the Commission as a whole, but we simply feel that the correct standard was cited based on the stipulated facts that were given to us and the circumstances as they were laid out by both parties as agreed to. Apparently, there's no disputing the facts at all. So that's what the decision is based on.

By order entered June 3, 2009, the Commission affirmed the citations, proposed penalty, and abatement requirements. Swift Roofing sought judicial review in the Davidson County Chancery Court pursuant to Tennessee Code Annotated Section 4-5-322. A hearing in the Chancery Court was held on October 26, 2010. A final order was entered on November 10, 2010, affirming both citations against Swift Roofing. In its final order, the Chancery Court incorporated, by reference, its statements from the bench in which it made detailed findings of fact and conclusions of law. Swift Roofing timely appealed and raises the two following issues for our review, as stated in its brief:

(1) The citation for violating 29 C.F.R. § 1926.501(b)(4)(i) is both substantively and procedurally erroneous, in that 29 C.F.R. § 1926.501(b)(10) is the sole applicable subsection related to fall protection standards for low-slope roofing work.

(2) The citation for violating 29 C.F.R. § 1926.503(a)(1) is erroneous, in that Swift Roofing's training program met the requirements of this subsection.

We have reviewed the record and conclude that judicial review is not possible based on the record before us because the Commission did not provide the statutorily required findings of fact, conclusions of law, and reasons supporting its decision. As we will explain, these findings are a prerequisite to effective judicial review; consequently, we vacate the order of the Chancery Court and remand for further proceedings consistent with this opinion.

The State of Tennessee enacted the Occupational Safety and Health Act of 1972, Tenn. Code Ann. §§ 50-3-101 *et seq.*, for the purpose of providing "safe and healthful working conditions" for Tennessee workers. Tenn. Code Ann. § 50-3-102(b); *Terminix Int'l Co. v. Tennessee Dep't of Labor*, 77 S.W.3d 185, 192 (Tenn. Ct. App. 2001). In furtherance of this purpose, TOSHA adopted the federal regulations for fall protection found in 29 C.F.R. §§ 1926.501 -.503. *See* Tenn. Code Ann. § 50-3-201(b); Tenn. Comp. R. & Regs. § 0800–01–06–.02(2), Occupational Safety and Health Standards for Construction.

The Commissioner of Labor and Workforce Development is authorized to investigate and issue citations for noncompliance with TOSHA regulations. Tenn. Code Ann. § 50-3-307. The TOSHA Review Commission was created to "review citations issued under § 50-3-307 and monetary penalties assessed under §§ 50-3-402 – 50-3-408" and is empowered to "affirm, modify or revoke a citation or a monetary penalty." Tenn. Code Ann. § 50-3-802. An order of the Commission affirming, modifying, or revoking a citation or penalty may be appealed pursuant to Tennessee Code Annotated Section 50-3-806. Tenn. Code Ann. § 50-3-307(b)(4). Such an appeal "shall be processed in accordance with the Uniform Administrative Procedures Act ["UAPA"], compiled in title 4, chapter 5." Tenn. Code Ann. § 50-3-806(b). The UAPA provides for judicial review of an agency decision in the chancery court, Tenn. Code Ann. § 4-5-322(b)(1)(A), and the decision of the chancery court may then be appealed to this Court pursuant to the Tennessee Rules of Appellate Procedure. Tenn. R. App. P. 3(a).

This Court, as well as the trial court, reviews the Commission's decision under the narrowly defined standard of review contained in the UAPA, Tenn. Code Ann. § 4-5-322(h), rather than under the broad standard of review used in other civil appeals. *Davis v. Shelby Cnty. Sheriff's Dept.*, 278 S.W.3d 256, 264 (Tenn. 2009). Specifically, that statute provides that:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its

weight, but the court shall not substitute its judgment for that of
the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

A reviewing court should generally defer to an administrative agency's decision when it is acting within its area of specialized knowledge, experience, and expertise. *Williamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n*, 11 S.W.3d 142, 146 (Tenn. Ct. App. 1999) (citing *Wayne Cnty. v. Tennessee Solid Waste Disposal Control Bd*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988)). This Court reviews the factual findings of the Commission under the limited provisions of Tennessee Code Annotated Section 4-5-322, and we review matters of law *de novo* with no presumption of correctness. *Davis*, 278 S.W.3d at 264 (citing Tenn. R. App. P. 13(d); *Cumulus Broad. Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007)).

In this case, however, meaningful review of the Commission's decision is precluded by the fact that the Commission did not include in its final order the necessary findings of fact, conclusions of law, and policy reasons upon which it reached its decision. The UAPA provides that, in cases such as this, the Commission, "shall render a final order," Tenn. Code Ann. § 4-5-314(a), and that such an order "shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order. . . ." Tenn. Code Ann. § 4-5-314(c).[2]

In *Levy v. State Board of Examiners for Speech Pathology and Audiology*, 553 S.W.2d 909, 911 (Tenn. 1977), the Tennessee Supreme Court addressed the then existing

---

[2]Tennessee Code Annotated Section 4-5-314 provides, in relevant part, as follows:

(c) A final order, initial order or decision under § 50-7-304 shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, including the remedy prescribed and, if applicable, the action taken on a petition for stay of effectiveness. Findings of fact, if set forth in language that is no more than mere repetition or paraphrase of the relevant provision of law, shall be accompanied by a concise and explicit statement of the underlying facts of record to support the findings. The final order, initial order or decision must also include a statement of the available procedures and time limits for seeking reconsideration or other administrative relief and the time limits for seeking judicial review of the final order. An initial order or decision shall include a statement of any circumstances under which the initial order or decision may, without further notice, become a final order.

(d) Findings of fact shall be based exclusively upon the evidence of record in the adjudicative proceeding and on matters officially noticed in that proceeding. The agency member's experience, technical competence and specialized knowledge may be utilized in the evaluation of evidence.

administrative procedures statute, which also required that the reviewing board's final decision include findings of fact, conclusions of law, and reasons for its ultimate decision. Therein, the Supreme Court stated that:

> The foregoing is not a mere technicality but is an absolute necessity without which judicial review would be impossible. As Justice Douglas pointed out in *Baltimore & O. R. Co. v. Aberdeen & R. R. Co.*, 393 U.S. 87, 89 S. Ct. 280, 21 L. Ed. 2d 219 (1968):

> "The requirement for administrative decisions based on substantial evidence and reasoned findings which alone make effective judicial review possible would become lost in the haze of so-called expertise. Administrative expertise would then be on its way to becoming 'a monster which rules with no practical limits on its discretion.'" 393 U.S. at 92, 89 S. Ct. at 283, 21 L. Ed. 2d at 224.

*Levy*, 553 S.W.2d at 911-12.

We have repeatedly held that an agency's failure to make specific findings of fact and conclusions of law precludes meaningful judicial review. *See, e.g., Levy*, 553 S.W.2d at 911-12; *Morris v. City of Memphis Civil Serv. Comm'n*, No. W2009-00372-COA-R3-CV, 2009 WL 4547688, at *5 (Tenn. Ct. App. Dec. 7, 2009); *Cnty. of Shelby v. Tompkins*, 241 S.W.3d 500, 503-04 (Tenn. Ct. App. 2007); *Wilson Cnty. School Sys. v. Clifton*, No. 01A01-9604-CH-00152, 1996 WL 656109, at *2-5 (Tenn. Ct. App. Nov. 13, 1996); *Kendrick v. City of Chattanooga Firemen's & Policemen's Ins. & Pension Fund Bd.*, 799 S.W.2d 668 (Tenn. Ct. App. 1990); *Shelby Cnty. Sheriff v. Shelby Cnty. Civil Serv. Merit Bd.*, 1990 WL 84577, at *3 (Tenn. Ct. App. June 25, 1990). A lack of such findings generally necessitates that we remand the case. *See, e.g.,* cases cited above.

We allow that the lack of such findings does not always frustrate judicial review, and that, in certain limited cases, the reviewing court has "soldiered on" and decided the case on its merits notwithstanding the lack of appropriate findings. *See, e.g., Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 511 (Tenn. Ct. App. 2009), *perm. app. denied*, (Tenn. Mar. 15, 2010); *Tompkins*, 241 S.W.3d at 504 (citing *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 2007)). In *Tompkins*, this Court determined that judicial review was not frustrated by the omission of the reviewing board's written final decision because the disputed issue was a "narrow one of pure law" and there were no disputed material facts. *Tompkins*, 241 S.W.3d at 503. Likewise, in *Macon*,

we determined that the failure of the reviewing board to provide its conclusions of law in its four-page decision did not preclude judicial review because "the basis of the [b]oard's determination [wa]s apparent from the content of the written decision and the record as a whole." *Macon*, 309 S.W.3d at 511. From these cases we ascertain that in order to conduct judicial review, "a reviewing court must have sufficient information regarding the agency action to determine whether the action comports with the law and to avoid substituting its judgment for that of the administrative tribunal." *Tompkins*, 309 S.W.3d at 504. In lieu of such information, a court lacks a basis from which to conduct meaningful review.

The present case comes to us on stipulated facts, and the issues appear at first glance to involve relatively straightforward questions of law. However, after reviewing the record, we conclude that judicial review is imprudent under these circumstances. The Commission's final order, of June 3, 2009, is a perfunctory, two-page order, which simply states that, "[h]aving thoroughly considered the respective positions and supporting documents presented by both parties, the Commission hereby grants the [Appellee's] Motion for Summary Judgment against [Swift Roofing], thereby affirming the Citation and Proposed Penalty issued to [Swift Roofing] in its entirety." The order does not incorporate by reference any findings of fact or conclusions of law made from the bench, nor can we locate such findings in the transcript of the June 3 hearing contained in the appellate record.

We find nothing in the record to indicate the basis for the Commission's decision on the issues raised by Swift Roofing's motion for summary judgment. Therein, Swift Roofing argued that it had complied with the appropriate regulation for the type of work that it was performing, 29 C.F.R. § 1926.501(b)(10), and that the regulatory violation for which it was cited, 29 C.F.R. § 1926.501(b)(4)(i), did not simultaneously apply. Additionally, Swift Roofing asserted that the second citation, for allegedly violating 29 C.F.R. § 1926.503(a)(1), did not apply because Swift Roofing had in place a safety training program, and although the deceased had not attended that program, he had received some personalized training.

However, in affirming the citations, the Commission did not provide any reasons or legal conclusions to support its ultimate decision. For example, the Commission did not state whether 29 C.F.R. § 1926.501(b)(4)(i) and 29 C.F.R. § 1926.501(b)(10) applied simultaneously or whether the type of work that Swift Roofing was performing did not fit within 29 C.F.R. § 1926.501(b)(10). Likewise, the Commission did not indicate why the training measures that Swift undertook were insufficient under 29 C.F.R. § 1926.503(a)(1). These are merely some examples of the findings that are lacking in the record.

On review, this Court is left to speculate as to both the reasons supporting the Commission's conclusions, and, in a broad sense, the conclusions themselves. We could, perhaps, infer the Commission's intentions based on its ultimate conclusion to affirm the

citations. However, such an inference should not be lightly given here because of the mandatory nature of the requisite findings under Tennessee Code Annotated Section 4-5-314(c) and the complete lack of such findings from which this Court could conduct its review.[3] This case involves interpreting the occupational safety and health standards applicable to the construction industry, a matter requiring specialized knowledge and expertise. It is necessary for the Commission, the body charged with reviewing citations in this field, to provide a reviewing court with some foundational basis upon which it can conduct its review. It is not the role of a reviewing court to make these initial findings. *See CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980). We note that the Chancery Court did make detailed findings as required by Tennessee Code Annotated Section 4-5-322(j). However, as discussed in *Levy*, these findings cannot be substituted for those required by the Commission because they would usurp the statutorily mandated judgment of the Commission. *Levy*, 553 S.W.2d at 912; *see also Mack v. Civil Serv. Comm'n of Memphis*, No. 02A01-9807-CH-00215, 1999 WL 250180, at *3-4 (Tenn. Ct. App. Apr. 28, 1999). For the same reason, it is not this Court's prerogative to make such findings in the first instance.

We vacate the decision of the Chancery Court for Davidson County. The case is remanded to the Chancery Court for entry of an order to remand to the State of Tennessee Occupational Safety and Health Review Commission with instructions to issue a decision containing findings of fact, conclusions of law, and reasons for its decision as required by Tennessee Code Annotated Section 4-5-314(c). Costs of this appeal are taxed one-half against the Appellant, Swift Roofing, Inc., and its surety, and one-half against the Appellee, State of Tennessee, Commissioner of Labor and Workforce Development, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[3]Furthermore, in the absence of a specific provision to the contrary, the Commission operates in accordance with the Tennessee Rules of Civil Procedure. Tenn. Comp. R. & Regs. § 1030–1–2–(2), Occupational Safety and Health Review Commission. Here, the Commission granted summary judgment pursuant to Tennessee Rules of Civil Procedure Rule 56.04, which provides that "the trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."