# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 19, 2013 Session

## WILLIAM H. THOMAS, JR. v. TENNESSEE DEPARTMENT OF TRANSPORTATION

**Appeal from the Chancery Court for Davidson County**
**No. CH-10-1777-IV      Russell T. Perkins, Chancellor**

---

**No. M2012-00672-COA-R3-CV - Filed April 9, 2013**

---

An applicant for billboard permits sought judicial review of the decision of the Tennessee Department of Transportation to deny the applications. Finding no error, we affirm the trial court's decision upholding the Department's denial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR., J., joined.

William H. Thomas, Memphis, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, and Bruce M. Butler, Assistant Attorney General, for the appellee, Tennessee Department of Transportation.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts in this case are not in dispute. On September 29, 2008, William H. Thomas, Jr., submitted to the Beautification Office of the Tennessee Department of Transportation ("TDOT" or "Department") two applications for billboard permits for a location within 660 feet of and visible from I-240 eastbound at log mile 1.82 in Shelby County.

For decades prior to that time, Clear Channel Outdoor, Inc. and its predecessors had a two-sided billboard situated on top of a commercial building located at I-240 eastbound, log mile 1.86. Clear Channel's billboard was covered by TDOT permits 79-3102 and 79-

3103. In 2008, Memphis authorities determined that the commercial building on which Clear Channel's billboard was located needed to be demolished. In response to the city's determination, Clear Channel removed its billboard from the rooftop in August 2008. Clear Channel then built a new monopole sign on an adjacent piece of property. It was Clear Channel's understanding that the new sign was in the location of its existing billboard permits and that those permits would cover the new sign.

On October 31, 2008, Mr. Thomas informed TDOT that the new Clear Channel sign was not on the same parcel of land as the original rooftop sign. After an investigation, TDOT notified Clear Channel that the new sign was not in the same location (footprint) as permits 79-3102 and 79-3103 and would, therefore, require new billboard permits. The Department also advised Clear Channel that it would have to cancel permits 79-3102 and 79-3103 in order to have permits issued for the new location.

Clear Channel submitted applications for new permits to TDOT on November 3, 2008, but these applications were returned to Clear Channel because they lacked sufficient filing fees. On November 5, 2008, Clear Channel submitted another set of applications for permits along with the appropriate filing fees. These applications were stamped as received by TDOT on November 6, 2008. Included with each of Clear Channel's permit applications was a letter requesting that the existing permits be cancelled simultaneously with the approval of the new permits:

> While these are separate requests they are concurrent and simultaneous so that there is no intervention of any kind between the process of cancelling our existing permits referenced above and issuing new permits for the applications enclosed.

On November 6, 2008, TDOT conducted field inspections of the locations covered by Clear Channel's applications and Mr. Thomas's applications for new billboard permits. On November 10, 2008, TDOT notified Clear Channel that its new sign was illegal because new permits had not been issued before the sign was constructed. On November 13, 2008, Mr. Thomas was notified by TDOT that his permit applications were denied because the applied for location was 200 feet from the existing Clear Channel monopole sign and Clear Channel permits 79-3102 and 79-3103. Thus, the location did not comply with the statutory requirement that there be 1000 feet of spacing.

On November 14, 2008, Clear Channel sent an e-mail to TDOT requesting withdrawal of its previous request for cancellation of permits 79-3102 and 79-3103. Clear Channel renewed these permits at the end of 2008 for the year 2009.

TDOT removed Clear Channel's "illegal" monopole sign on June 15, 2009, and Clear Channel rebuilt the monopole sign within the footprint covered by permits 79-3102 and 79-3103.

*Administrative review*

After his billboard permit applications were denied on November 13, 2008, Mr. Thomas requested an administrative hearing. The hearing was held on November 12 and 13, 2009; the ALJ heard testimony from Connie Gilliam, the TDOT employee responsible for processing billboard permit applications; her supervisor, Shawn Bible; Robert Shelby, TDOT regional manager; and Larry Quas, the Clear Channel employee who handled the permit applications at issue.

The ALJ entered an initial order on March 4, 2010 upholding TDOT's decision to deny Mr. Thomas's permit applications. The ALJ's initial order includes detailed factual findings and analysis. The ALJ rejected Mr. Thomas's argument that Clear Channel effectively cancelled its permits by requesting cancellation in the letters submitted on November 5, 2008. The ALJ noted that Mr. Thomas's applications were filed prior to any applications or cancellations by Clear Channel. Under TDOT's "first come, first served" rule, therefore, Mr. Thomas's applications "should have been processed first, and any other applications for locations within 1000 feet of his Applied for Location should not have been processed until Mr. Thomas'[s] rights in his applications are fully resolved." The ALJ found that TDOT's beautification office properly processed Mr. Thomas's applications first.

Addressing Mr. Thomas's argument that Clear Channel's existing permits were cancelled effective November 6, 2008 (when TDOT received Clear Channel's applications and letters), prior to any field inspection, the ALJ discussed the language of Clear Channel's letters as well as its actions evidencing the intent not to cancel the existing permits unless and until it obtained new permits. The ALJ went on to state:

> The procedure urged by Mr. Thomas would require the Beautification Office to not only ignore Mr. Quas'[s] letter(s) of November 5, 2008, but to arbitrarily act in direct contradiction to the express instructions therein, and thereby destroy Clear Channel's property rights in its existing permits. Such action would be indefensible.

> It would also require the Beautification Office to give immediate effect to permit cancellations without regard to whether or not the related sign had been removed. Both Ms. Gilliam and Mr. Shelby testified that while there is no written policy on processing cancellation requests that accompany new

applications, such cancellations could not be effective until a field inspection was conducted to assure that related signage was removed. Otherwise, it would create un-permitted outdoor advertising in violation of the [Billboard Regulation and Control Act].

. . .

Mr. Thomas filed applications for a location that was within the prohibited 1000 feet space of Clear Channel permits 79-3102 and 79-3103. Clear Channel's earlier removal of its sign from its roof top support onto a monopole did not cause those permits to be cancelled. Its error in so rebuilding at other than the exact same location did not cause such a cancellation. Mr. Quas['s] cancellation request of November 5, 2008, by its own unequivocal terms, did not cause such a cancellation, before it was withdrawn. The Clear Channel permits were in full force and effect for a conforming location and Clear Channel had full legal rights to rebuild its sign at that exact location, which it ultimately did. Consequently, the Department's denial of Mr. Thomas['s] applications within 1000 feet of the Clear Channel permits was not only appropriate, but was mandated by the Act and the Rules.

(Citations to record omitted).

Mr. Thomas filed an administrative appeal of the ALJ's initial order. A final order affirming the initial order was issued on September 24, 2010.

*Proceedings in chancery court*

Mr. Thomas filed the instant petition for judicial review on November 4, 2010. The chancellor held a hearing on September 26, 2011.

On March 23, 2012, the trial court entered an order affirming the decision of TDOT's commissioner. The trial court adopted the findings of fact set forth in the ALJ's March 4, 2010 initial order and went on to make additional findings of fact regarding letters and e-mails between Clear Channel and TDOT and Mr. Thomas and TDOT. With regard to Mr. Thomas's cancellation arguments, the trial court stated:

Clear Channel's communications in November 2008 caused some confusion, as did the circumstances surrounding the changing of the configuration of its billboard. The Court agrees with the ALJ and the Commissioner's conclusion that none of this conduct operated as a voluntary cancellation of Clear Channel's billboard permits. Clear Channel's letters of November 5, 2008 were meant to be conditional and its E-mail of November 14, 2008 cleared up

-4-

the confusion about whether it was voluntarily cancelling its permits. Similarly, the [ALJ] and the Commissioner were well within the law and were supported by the substantial and material evidence in the record in deciding that Clear Channel's conduct in reconfiguring its billboard did not operate, in a self-executing involuntary manner, to cancel Clear Channel's billboard permits.

On appeal, Mr. Thomas argues that the trial court erred in its interpretation and application of TDOT's rules regarding applications for billboard permits.

STANDARD OF REVIEW

The applicable standard of review is found at Tenn. Code Ann. § 4-5-322(h):

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Under the Uniform Administrative Procedure Act ("UAPA"), this court, like the trial court, must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007); *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). Substantial and

material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 508 (Tenn. Ct. App. 2009) (quoting *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). It is "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* at 508 (quoting *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). We may overturn the administrative agency's factual findings "only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 265 (Tenn. 2009) (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)). This narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty.*, 756 S.W.2d at 279.

With respect to questions of law, our review is de novo with no presumption of correctness. *Cnty. of Shelby v. Tompkins*, 241 S.W.3d 500, 505 (Tenn. Ct. App. 2007). Issues of statutory construction present questions of law and are therefore reviewed de novo with no presumption of correctness. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

ANALYSIS

Mr. Thomas argues that the trial court erred in its interpretation and application of TDOT rules, specifically the "first come first served" rule and its rules regarding cancellation, in this case. For the reasons set forth below, we cannot agree with Mr. Thomas's arguments.

The Department has responsibility for enforcement of the provisions of the Billboard Regulation and Control Act of 1972,[1] Tenn. Code Ann. §§ 54-21-101–54-21-123. *See* Tenn. Code Ann. §§ 54-21-112, 54-21-116. Under this act, a person cannot erect outdoor advertising within 660 feet of an interstate or primary highway without obtaining a permit from TDOT. Tenn. Code Ann. § 54-21-104(a). Department rules provide that applications for billboard permits will be "considered on a first come first serve basis." Tenn. Comp. R. & Regs. § 1680-2-3-.03(1)(a)(5)(i).[2] These rules further provide that "[n]o two structures

---

[1] Tennessee's billboard regulation law was enacted in response to the Federal Highway Beautification Act of 1965, 23 U.S.C. §§ 131, 136, and 319.

[2] The "first come first served" provision in the current rules, amended effective December 2008,
(continued...)

shall be spaced less than 1000 feet apart on the same side of the highway." Tenn. Comp. R. & Regs. § 1680-2-3-.03(1)(a)(4)(i)(I).

Mr. Thomas's primary argument on appeal is that Clear Channel's permits 79-3102 and 79-3103 were cancelled pursuant to the two letters received by TDOT on November 6, 2008. According to Mr. Thomas's reasoning, this cancellation should have been effective on November 6, 2008, prior to TDOT's receipt of Clear Channel's letter of November 14, 2008 withdrawing its cancellation letter. There are, however, several flaws in Mr. Thomas's position. Under the first come first served rule, TDOT had to consider Mr. Thomas's applications before the later applications of Clear Channel. The Department takes the position that, to give effect to the first come first served rule, "no conflicting applications could be considered by the Department until the conclusion of Mr. Thomas'[s] appeal." The Department's interpretation of its own rules "controls unless it is plainly erroneous or inconsistent with the regulation itself." *Clear Channel Outdoors v. Tenn. Dep't of Transp.*, 337 S.W.3d 801, 806 (Tenn. Ct. App. 2010). We find no such error or inconsistency here.

According to Mr. Thomas, TDOT should have processed the cancellation request included in Clear Channel's November 6, 2008 immediately. The Department presented testimony concerning its unwritten policy during the relevant time period that a cancellation request not be granted until after a field inspection to confirm that the advertising had been removed.[3] The Department's field inspection revealed that Clear Channel had erected an "illegal" sign near the site of Clear Channel's new applications. Thus, even in the absence of Mr. Thomas's intervening application, TDOT would not have processed Clear Channel's new applications. Permits 79-3102 and 79-3103 remained in effect as they had not been cancelled or abandoned. *See* Tenn. Comp. R. & Regs. § 1680-2-3-.02(1).

We find Mr. Thomas's assertion that TDOT should have processed Clear Channel's cancellation request without processing the associated applications for new permits to be unpersuasive. The ALJ made an express finding concerning Clear Channel's intent not to cancel its existing permits until TDOT granted its applications for new permits. We find nothing in TDOT regulations that would require the Department to ignore the conditional nature of the cancellation submitted by Clear Channel. The Department's decision to consider the entire package–applications and cancellations–together is entirely consistent

---

[2](...continued)
appears at Tenn. Comp. R. & Regs. § 1680-02-03-.03(1)(a)(7)(v). This opinion refers to the TDOT rules in effect prior to December 2008.

[3]The new rules and regulations that took effect on December 8, 2008 address the processing of applications in detail. Tenn. Comp. R. & Regs. § 1680-02-03-.03(1)(a)(7) (2008).

with its rules and enabling statutes.

Having considered all of Mr. Thomas's objections, we must affirm the trial court's decision upholding the Department's actions.[4]

CONCLUSION

The judgment of the trial court is affirmed. Costs of appeal are assessed against Mr. Thomas, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[4]We find it unnecessary to consider Mr. Thomas's argument concerning whether the application of TDOT's rules to the undisputed facts should be treated as a question of law or of fact.