Yvonne N. ROBERTSON

v.

**TENNESSEE BOARD OF SOCIAL WORKER CERTIFICATION AND LICENSURE et al.**

Supreme Court of Tennessee, at Nashville.

Feb. 1, 2007 Session.

June 27, 2007.

Michael E. Terry and Stephanie H. Gore, Nashville, Tennessee, for the appellant, Yvonne N. Robertson.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and Sara E. Sedgwick, Assistant Attorney General, for the appellees, Tennessee Board of Social Worker Certification and Licensure and Tennessee Department of Health.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and GARY R. WADE, JJ., joined.

We accepted this appeal to determine the effect of a Tennessee administrative agency's consideration of irrelevant or immaterial evidence on the agency's choice of a remedy in a contested case hearing. While we hold that an agency's consideration of irrelevant or immaterial evidence in a contested case hearing is erroneous, a party's failure to object to the evidence waives any argument of error on appeal. In this case, we do not disturb the Tennessee Board of Social Worker Certification and Licensure's order to revoke clinical social worker Yvonne N. Robertson's license because it is warranted in law and justified in fact. The judgment of the Court of Appeals is affirmed. We remand this case to the Tennessee Board of Social Worker Certification and Licensure for further action consistent with this opinion.

## FACTS & PROCEDURAL HISTORY

Appellant Yvonne N. Robertson had a difficult childhood and young adulthood. From the age of twelve until the age of thirty, she suffered from alcohol and drug abuse. In the early 1980s, Robertson cashed payroll checks that did not belong to her in order to support her drug habit. In 1982, she was convicted of three felony counts of forgery and thereafter spent more than a year in prison. In 1989, at the age of thirty, Robertson began to re-build her life by attending Alcoholics Anonymous meetings and working through her difficulties with substance abuse. She also returned to school, ultimately earning a master's degree in social work.

In 1994, appellee Tennessee Board of Social Worker Certification and Licensure ("Board") licensed Robertson as a certified master social worker. In 1996, seeking to advance her career, Robertson applied to become a licensed clinical social worker. Initially, the Board denied her application and her right to take the licensure examination because of her 1982 forgery convictions. Robertson appealed the Board's denial of her application for licensure and prevailed. She took and passed the examination, receiving her license as a clinical social worker in 1997.

In September 1997, Robertson secured employment as a therapist with the Great Starts program of Child and Family, a Knoxville nonprofit community agency. Great Starts operated three shelters and a residential facility to treat women struggling with substance abuse and mental illnesses. As part of its residential treatment program, Great Starts offered its clients individual therapy, group therapy, behavioral modification classes, and access to independent support groups such as

Alcoholics Anonymous and Narcotics Anonymous.

Early in 1998, Great Starts assigned a residential client, D.W.,[1] to Robertson for individual therapy. Among other things, D.W. suffered from alcohol abuse. Initially, D.W. resided at Great Starts only for a short time before leaving on her own accord. D.W. returned to residential treatment at Great Starts in December 1998. During D.W.'s second round of treatment at Great Starts, which lasted until August 1999, Robertson led the group therapy sessions in which D.W. participated but was not responsible for her individual therapy. In addition, from June 1999 until August 1999, D.W. served as a "pseudo staff person" at Great Starts, doing odd jobs for Great Starts in exchange for Great Starts allowing her to occupy a residential apartment rent-free. D.W.'s mother passed away in July 1999. In August 1999, D.W. moved out of Great Starts and into her deceased mother's home, although Great Starts continued to provide her with outpatient care.

Despite her role in D.W.'s second round of treatment, Robertson developed a significant personal relationship with D.W. because she wanted to help D.W. "stay sober" in the aftermath of D.W.'s mother's death. From July until October 1999, D.W. attended with Robertson sporting events in which one of Robertson's sons participated; Robertson and D.W. attended two group camping trips together; D.W. spent the night at Robertson's house on at least two occasions; Robertson and D.W. took walks together three or four times a week, sometimes in close proximity to Robertson's residence; the two attended Alcoholics Anonymous meetings together;[2] and, on September 16, 1999, Robertson allowed D.W. to be present for a personal court appearance in which Robertson sought an order of protection against one of her ex-husbands. All of these activities occurred outside the confines of Great Starts' treatment program.

After having seen D.W. with Robertson in court, Robertson's supervisor confronted Robertson about the ethical implications of her relationship with D.W. For a licensed clinical social worker in Tennessee, it is prohibited, unethical conduct to fail "to make every effort to avoid dual," or simultaneously personal and professional, "relationships with clients and/or relationships which might impair independent professional judgment or increase the risk of client exploitation." Tenn. Comp. R. & Reg. 1365-1-.13(j) (2006);[3] see also Tenn. Code Ann. § 63-23-106(a)(7) (1997). During Robertson's conversation with her supervisor about D.W., Robertson admitted to some, but not all, aspects of her personal relationship with D.W. Robertson's supervisor directed her to break off her personal relationship with D.W. On October 6, 1999, Robertson invited D.W. on another of their walks near Robertson's home. During the walk, Robertson told D.W. about her need to end their personal relationship. D.W. became very angry with Robertson. The next day, D.W. telephoned Robertson at her residence and

---

**1.** As did the courts below, we refer to Robertson's client only by her initials to protect her privacy.

**2.** Robertson testified that Great Starts required her to provide clients with transportation to independent support groups such as Alcoholics Anonymous. Her duties did not, however, extend to attendance at and participation in Alcoholics Anonymous meetings with a client.

**3.** Although we cite to the current version of section 1365-1 throughout this opinion, the 2006 regulations are identical to those that were in effect at the time that this action arose.

asked to speak with her again in person. Robertson advised D.W. that Great Starts had scheduled a treatment team meeting for the next day in which she could participate.

At the October 8, 1999 treatment team meeting, D.W., Robertson, and other Great Starts staff members were in attendance. At the meeting, Robertson discussed her personal relationship with D.W. and her need to end it. After the meeting, sometime between October 8, and 12, 1999, D.W. threatened to kill Robertson's supervisor, whom she blamed for the termination of her relationship with Robertson. As a result, on October 12, 1999, Great Starts held another treatment team meeting with D.W. present. At this meeting, Great Starts informed D.W. that it could no longer offer her any treatment at its facility but that she could receive continuing outpatient care at another Child and Family treatment center located about five miles away.

D.W. did not respond well to these changes. Although she did receive some therapy after leaving Great Starts, D.W. fell into a depression that lasted several months. She also relapsed into heavy drinking. On two occasions, once soon after leaving Great Starts and a second time a few months later, D.W. requested that Robertson attend a therapy session with her so that D.W. could work through her pain and anguish over their relationship's abrupt end. Robertson did so. Through D.W.'s continuing therapy, D.W.'s therapist and Great Starts became aware of the full extent of Robertson's relationship.

Robertson initially received a written reprimand from her employer for her conduct. Her conduct with D.W. was also reported to the Division of Health Related Boards within appellee Tennessee Department of Health ("Department of Health"),

which initiated an investigation. In November 2001, after completing its investigation, the Department of Health served Robertson with a Notice of Charges. The Notice indicated that the Department of Health sought suspension or revocation of her license on a single ground: unethical conduct resulting from her inappropriate dual relationship with D.W. The Notice of Charges also contained, under a heading "Allegations of Fact," a reference to the Board's initial denial of her license based on the 1982 convictions and a copy of the Board's 1997 Order that allowed her to take the licensing examination despite her felony convictions.

On May 6, 2002, the Board conducted a contested case hearing regarding the November 2001 Notice of Charges. Robertson testified, admitting her dual relationship with D.W. and describing the relationship's full scope. She did not dispute that her conduct had harmed D.W. Though the Department of Health's counsel referred several times to the 1997 Order that recited Robertson's 1982 felony convictions, Robertson's counsel did not object. In fact, on direct examination, Robertson's counsel specifically questioned Robertson about the circumstances surrounding the convictions. At the hearing, D.W. also testified about her personal relationship with Robertson and its termination, including her decline back into depression and drinking after the relationship ended. D.W. stated, "[Robertson] felt like a second mom to me.... I felt I lost my best friend. It's taught me not to get too close to people anymore. So I steer away. I don't let my feelings ... show ... anymore." Based on the facts presented, the Board unanimously found that Robertson had committed the charged ethical violation of engaging in a dual relationship with a client. In its discussion prior to reach-

ing this conclusion, the Board made no reference to her felony convictions.

Having determined that Robertson violated its rules, the Board then deliberated on an appropriate remedy. One Board member initially advocated the full revocation of Robertson's license. Under the Board's regulations, a full revocation "is the most severe form of disciplinary action" because it "terminates the certification or licensure previously issued[,] ... relegat[ing] the violator to the status [she] possessed prior to application for certification or licensure." Tenn. Comp. R. & Reg. 1365–1–.15(1)(e). Board members who initially favored full revocation expressed concern that the 2002 hearing was Robertson's second contested case hearing before the Board. They also found troubling Robertson's failure to disclose before the hearing the full scope of her personal relationship with D.W.

By contrast, another Board member stated that "I believe that this [dual relationship] has been demonstrated as an isolated incident, and, although there is a history of a felony conviction, I believe Ms. Robertson paid a penalty for that and this [new incident] should be viewed on its own merits or lack thereof." This Board member recommended the suspension of Robertson's license, the Board's second severest classification of disciplinary action. *Id.* 1365–1–.15(1)(d).

After a lengthy discussion, the Board revoked Robertson's license but authorized her to apply for reinstatement in two years, provided that she undertook six hours of ethics education credit each year over and above the customary requirement for a licensee and appeared again before the Board. As specifically permitted by the Board's revocation regulation, *id.* 1365–1–.15(1)(e), the Board chose not to impose the harsher penalty of revoking Robertson's license outright, which would

have forced Robertson, if she wished to practice clinical social work in the future, to re-apply for a license as if she were a new applicant. New applicants must take the licensure examination. *See id.* 1365–1–.04(2).

As Tennessee Code Annotated section 4–5–314(c) requires, the Board made findings of fact in the July 29, 2002 Order that finalized its decision at the contested case hearing. The last of the Order's findings of fact cites and incorporates the Board's 1997 Order mentioning Robertson's 1982 felony convictions. The "Conclusions of Law" and "Reasons for the Decision" sections, however, address only the dual relationship violation.

Robertson appealed her license revocation to the Davidson County Chancery Court. The trial court reversed the Board's decision and remanded the case to the Board for a new hearing. The trial court concluded that the Board's decision was either an abuse of discretion because it used Robertson's felony convictions as "an additional charge/ethical violation against her" in the second contested case hearing, or, if the Board had not taken the convictions into account when choosing a remedy, then the decision was "arbitrary and capricious, against all logic and reasoning, and result[ed] in an injustice" because the remedy was unduly severe for a first violation of the Board's rules. The trial court ordered "a new hearing before a new panel and [administrative law judge] untainted by knowledge of the 1982 convictions."

A divided Court of Appeals panel reversed the trial court's judgment and reinstated the Board's remedy. The majority determined that the Board's remedy should not be disturbed because there was a sufficient legal and factual basis for it. The majority also determined that if the Board did take Robertson's felony convic-

tions into account when choosing a remedy, it properly did so because Tennessee Code Annotated section 4–5–313(6)(B) (1998) allows an agency to take "[o]fficial notice" of "[t]he record of other proceedings before the agency" and because Robertson made no objection to evidence of the felony convictions at the Board hearing.

One judge dissented. While the dissenting judge agreed with the majority that the Board had the legal authority to impose as severe a remedy as it did, the dissenter asserted that "there is simply no way a court can determine" whether the remedy was warranted "because the Board considered pre-licensure conduct," her 1982 forgery convictions, which were "unrelated to the offense" of establishing and maintaining a dual relationship with a client. As a result, the dissenting judge would have affirmed the trial court's ruling.

Robertson applied to this Court for permission to appeal. We accepted her appeal to determine the effect of a Tennessee administrative agency's consideration of irrelevant or immaterial evidence on the agency's choice of a remedy in a contested case hearing.

## DISCUSSION

Robertson acknowledges that she violated the Board's ethics rules and does not dispute that her actions harmed D.W. On appeal, Robertson argues only that (1) the Board exceeded its authority and acted arbitrarily and capriciously when it used her pre-licensure felony convictions to enhance the *remedy* it imposed for a first offense, and (2) the Board violated Robertson's constitutional right to due process under the law by taking her felony convictions into consideration when imposing a remedy.

## Standard of Review

Tennessee's Uniform Administrative Procedures Act ("UAPA") provides the standard of review that Tennessee courts use when reviewing an administrative agency's "final decision in a contested case":

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn.Code Ann. § 4–5–322(a)(1), (h) (2005). In addition, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded, or modified by the reviewing court unless for errors that affect the merits of such decision." *Id.* § 4–5–322(i). Trial courts and appellate courts alike review agency decisions under these standards, which are more limited than those applied in other civil appeals. *C.F. Indus. v. Tenn. Pub. Serv. Comm'n,* 599 S.W.2d 536, 540 (Tenn.1980); *Metro. Gov't of Nashville & Davidson County v. Shacklett,* 554 S.W.2d 601, 604 (Tenn.1977); *Gluck v. Civil Serv. Comm'n,* 15 S.W.3d 486, 490 (Tenn.Ct.App.1999).

When we review only an agency-imposed remedy, we have noted that "[t]he appropriate remedy is peculiarly within the discretion of the [agency]." *McClellan*

v. Bd. of Regents of State Univ., 921 S.W.2d 684, 693 (Tenn.1996). As a result, we will only review whether the remedy is "unwarranted in law" or "without justification in fact." Mosley v. Tenn. Dep't. of Commerce & Ins., 167 S.W.3d 308, 321 (Tenn.Ct.App.2004) (quoting Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)).

### The Board's Consideration of Robertson's Felony Convictions

We begin by analyzing whether the Board's consideration of Robertson's stale felony convictions is error under the UAPA. Tennessee's Rules of Evidence do not specifically apply to administrative hearings. See Roberts v. Traughber, 844 S.W.2d 192, 196 (Tenn.Ct.App.1991). The UAPA standard governing admissibility of evidence in a contested case hearing states that:

> The agency shall admit and give probative effect to evidence admissible in a court, and when necessary to ascertain facts not reasonably susceptible to proof under the rules of court, evidence not admissible thereunder may be admitted if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. The agency shall give effect to the rules of privilege recognized by law and to agency statutes protecting the confidentiality of certain records, and shall exclude evidence which in its judgment is irrelevant, immaterial or unduly repetitious.

Tenn.Code Ann. § 4–5–313(1) (1998). Even under this relaxed standard, however, the UAPA plainly requires the exclusion of irrelevant or immaterial evidence.

We agree with the trial court and the Court of Appeals below that the 1982 convictions and 1997 Order were not relevant to the Board's decision in Robertson's case and should not have been admitted. Robertson was charged solely with establishing and maintaining a dual relationship with D.W. That Robertson, while abusing drugs and alcohol twenty years earlier, forged three checks to support a drug habit, is not probative of her 1999 professional conduct. Nor are the pre-licensure convictions relevant in this case to a consideration of the appropriate remedy, because their existence and relevancy already had been considered fully before the initial license was ever granted.

We reject the Board's contention that it properly considered the convictions because Tennessee Code Annotated section 4–5–313(6)(B) allows an agency to take "official notice" of "[t]he record of other proceedings before the agency." While the statute clearly confers this general authority, we believe that the more specific statute controlling the admissibility of evidence in a contested case hearing constrained any general right to take notice of the record of previous agency proceedings. See, e.g., Arnwine v. Union County Bd. of Educ., 120 S.W.3d 804, 809 (Tenn.2003) ("[s]pecific statutory provisions control over conflicting general provisions"). We conclude, then, that the Board's consideration of Robertson's felony convictions was erroneous.

We emphasize the narrowness of our holding. We have merely determined that, under the evidentiary rules that apply to UAPA adjudicative hearings, evidence of Robertson's pre-licensure conduct that was entirely unrelated to her 1999 misconduct and that the Board specifically considered in conjunction with its 1997 decision to grant her a license was improperly a part of the Board's deliberations. In this case, Robertson's offenses were committed prior to her licensure and therefore before any duty to abide by the regula-

tions applicable to social workers. Had Robertson committed the felonies *after* licensure, their consideration might have been relevant in crafting the appropriate remedy, regardless of whether they were probative of whether she committed the infraction with which she was charged.[4]

In this particular case, though, our inquiry does not end here.

■ Robertson failed to preserve this issue for review because she did not object at the hearing to the felony convictions' admissibility. Instead, Robertson's counsel addressed the convictions in his opening statement and questioned Robertson specifically about them. "A party who invites or waives error . . . is not entitled to relief on appeal." *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn.Ct.App.2000); *see also* Tenn. R.App. P. 36(a). When a party fails to object to or affirmatively elicits evidence, that evidence, even if otherwise inadmissible, " *'may properly be considered and given its natural probative effect as if it were in law admissible,* the only question being with regard to how much weight [it] should be given.'" *State v. Smith*, 24 S.W.3d 274, 280 (Tenn.2000) (citation omitted); *Anderson v. Carter*, 512 S.W.2d 297, 306–07 (Tenn.Ct.App.1974). An administrative tribunal, like a trial court, must be given the opportunity to correct procedural errors. *McClellan*, 921 S.W.2d at 690. "Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is ineffective and unreasonable." *Id.* Because Robertson's counsel did not object to admission of the 1997 Order at the hearing, and, in fact, affirmatively elicited testimony concerning the felony convictions, Robertson may not now challenge the Board's consideration of this evidence.

■ Even if Robertson had not waived this issue, we would still be constrained from reversing or modifying the Board's remedy on this basis. As we show below, any impact that the felony convictions may have had on the Board's choice of a remedy did not affect the decision's merits. *See* Tenn.Code Ann. § 4–5–322(i) (2005).

### The Board's Revocation of Robertson's License

■ Upon a finding of unethical conduct, the Board's regulations authorize it to impose any of the following remedies: (a) advisory censure, (b) formal reprimand, (c) probation, (d) license suspension, or (e) license revocation with the opportunity for reinstatement without re-taking the licensure examination, or license revocation with no opportunity for reinstatement. Tenn. Comp. R. & Reg. 1365–1–.15. The Board chose the more lenient option in (e) for Robertson.

For a first offense, license revocation with an opportunity for reinstatement is severe. At the same time, Robertson did not dispute the extent of her misconduct. In direct contravention of ethical rules, Robertson carried on an escalating personal relationship with D.W. over a period of many months. When confronted by her supervisor about her relationship with D.W., Robertson was not forthcoming about the extent of her unethical behavior. At the point Robertson broke off her personal relationship with D.W., she chose to do so in a personal setting (going for a walk near her home with D.W.) rather than in a professional one (for instance, at Great Starts). After the relationship's demise, D.W. fell into a depression and relapsed into drinking. In addition, the dual relationship's abrupt termination caused

---

**4.** Tennessee Code Annotated section 63–23–106(a)(12) establishes conviction of a felony *by a licensee* as a separate ground for revocation or suspension of license.

D.W. to threaten Robertson's supervisor's life, which, in turn, led to D.W.'s discharge from Great Starts and further setbacks in her recovery.

These undisputed facts overwhelmingly support the "Reasons for the Decision" stated in the Board's Order: "[Robertson] failed to make an effort to avoid a dual relationship with the client and/or a relationship that might impair her independent professional judgment or increase the risk of client exploitation. [Robertson] did knowingly form a dual relationship, and this relationship did harm to the client." The Board's remedy is warranted in law and clearly justified in fact, without even reaching the issue of the felony convictions' impact on the Board's choice of a remedy. While we might not have chosen the same remedy that the Board did, "reviewing courts cannot reverse an agency merely because they might have decided the matter differently." *Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 671 (Tenn.1977); *see also* Tenn.Code Ann. § 4–5–322(5)(B). We will not disturb the Board's order to revoke Robertson's license.

### Constitutional Claim

Robertson also contends that the Board violated her rights under the United States and Tennessee Constitutions. Because the Board considered the pre-licensure felony convictions, Robertson argues, the Board deprived her of her license without due process of law. While we agree with Robertson that "the right to engage in a chosen profession or occupation without unreasonable governmental interference or deprivation is both a property and a liberty interest protected by the Due Process Clause of the Fourteenth

Amendment and Tenn. Const. art. I, § 8,"[5] *Martin v. Sizemore*, 78 S.W.3d 249, 262 (Tenn.Ct.App.2001), a constitutionally compliant deprivation hearing is one at which, inter alia, the government shows "cause" for why a "license, issued by [the] State, [should be] suspended or revoked," namely through "proof of [the license holder's] culpable conduct." *Id.* at 262–63. As discussed above, the record before us contains ample proof, unrelated to the felony conviction, of Robertson's "culpable conduct." Furthermore, Robertson argues neither that the Board's hearing process failed to provide her with adequate notice of the 2002 contested case hearing or an opportunity to be heard at the hearing, the two minimum requirements of procedural due process, *see, e.g., Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), nor that the Board provided her with inadequate process in light of the specific property interest of which she was deprived, *see Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Robertson also was on specific notice that the 1997 Order and 1982 convictions would be addressed at the hearing. The 1997 Order was attached to the 2001 Notice of Charges served on her before the 2002 hearing, yet she never objected to the convictions' introduction into evidence. We believe Robertson simply re-argues here her issue about the felony convictions' influence on the Board's choice of a remedy. We find no new merit in this argument when it is characterized in constitutional terms.

### CONCLUSION

For the reasons stated above, we do not disturb the Board's order to revoke Robertson's license to practice clinical social

---

5. Because the United States and Tennessee Constitutions provide very similar procedural due process guarantees, *Sizemore*, 78 S.W.3d at 262, we analyze Robertson's federal and state claims together.

work. The judgment of the Court of Appeals is affirmed. We remand this case to the Board for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Yvonne N. Robertson, and her surety, for which execution may issue, if necessary.