IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2019

## DAVID MARK SLOANE v. TENNESSEE DEPARTMENT OF STATE, BUSINESS SERVICES DIVISION

Appeal from the Chancery Court for Davidson County
No. 18-466-II        Anne C. Martin, Chancellor

_____

### No. M2019-00126-COA-R3-CV
_____

On September 30, 2016, Appellee Tennessee Secretary of State, Business Services Division assessed $25,000.00 in civil penalties against Appellant David M. Sloane for his violations of the Athlete Agent Reform Act of 2011.  Mr. Sloane requested a hearing to dispute the penalties, and the Administrative Law Judge ("ALJ") reduced the penalties to $5,000.00 for each violation and $740.00 in investigatory costs.  Mr. Sloane then filed a petition for judicial review with the trial court; the trial court affirmed the ALJ's order.  Mr. Sloane appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

David M. Sloane, West Coral Springs, Florida, appellant, *pro se*.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, Janet M. Kleinfelter, Deputy Attorney General, and Kelley L. Grover, Assistant Attorney General, for the appellee, Tennessee Department of State, Business Services Division.

## OPINION

## I. Background

Mr. David M. Sloane ("Appellant"), a Florida resident, worked as a professional sports agent with a focus on representing young baseball players. In 2012, Mr. Sloane became aware of Mr. Jordan Sheffield, a talented young baseball player in Tullahoma, Tennessee with good Major League Baseball ("MLB") draft prospects. That fall, Mr. Sloane initiated correspondence with the Sheffield family, including Mr. Justus Sheffield, Jordan's younger brother who was also a talented young baseball player.[1] In October 2012, Mr. Sloane traveled to Jupiter, Florida to meet with Jordan and Justus' parents, Travis and Misty Sheffield. Thereafter, Mr. Sloane kept in touch with the family by telephone and email. In December 2012, Mr. Sloane sent an email to Jordan and Justus, copying their parents, in which he stated, in part:

> If you are interested in anything about me, please check out my web site . . . . You can email me questions you may have as well or if it's ok with your Parents, I'm available by phone any time. If you get my voice mail, I promise you will hear back from me within 24 hours as long as you leave a number for me to call.
>
> ***
>
> Thanks for giving me a chance to communicate with you. I promise you will never regret giving me this chance to show you what I bring to the table.

In the spring of 2013, Mr. Sloane met with Jordan, Justus, and their parents in the family's home in Tennessee. At that time, Jordan was a senior in high school and Justus was a junior. The purpose of Mr. Sloane's visit was to discuss the prospect of Mr. Sloane representing Jordan and Justus, the services Mr. Sloane could provide, and the cost of Mr. Sloane's services. During this meeting, Mr. Sloane showed the family his standard agency contract, but neither Jordan nor Justus signed a contract.

During the MLB 2013 draft process, Jordan did not sign with a team and chose instead to attend Vanderbilt University. In August 2013, Justus began his senior year of high school, and Mr. Sloane remained in contact with him. On August 13, 2013, Mr. Sloane emailed Justus, copying his parents, and stated, in part:

---

[1] Mr. Sloane alleges that he initiated correspondence when he mailed a letter to the family followed by a telephone call to Mr. Travis Sheffield, Jordan's father. Mr. Sloane further alleges that, during the telephone call, Travis explained that Jordan already had a professional agent. Despite this information, Mr. Sloane continued to contact the Sheffield family.

- 2 -

My initial objective in this relationship is acquiring you as a client. To this point, I have tried to provide as much information as possible about myself, the business of Professional Baseball, and my view of what role I will play in your future MLB career.

*** 

I promise that we will be seeing each other several times between now and the MLB Draft in June. I will be in Tullahoma this Fall and will see you again at the Jupiter Showcase in Oct. I will return to see you at some point during your HS season. In between these visits, should you require my presence, I'm a short plane trip away. I will also be keeping in constant touch with you and/or your family by phone, email and texts.

In the fall of 2013, Mr. Sloane made a call to the Sheffields to discuss Justus' 2014 draft prospects, the draft process, Mr. Sloane's representation of Justus, and Mr. Sloane's professional agency contract. Shortly after this conversation, the Sheffields decided that Mr. Sloane would represent Justus. In November 2013, Mr. Sloane and Justus came to an oral agreement concerning Mr. Sloane's contract, but Justus never signed a written contract. However, after November 2013, Justus informed baseball scouts that Mr. Sloane represented him, and Mr. Sloane began communicating with scouts and other professionals on Justus' behalf.

In 2012, when he initially contacted the Sheffields, Mr. Sloane was registered as an athlete agent in Florida and Alabama; he was not yet registered as an athlete agent in Tennessee. In April 2014, Mr. Sloane submitted his registration application to the Tennessee Secretary of State, Business Services Division ("Appellee" or "Business Services Division") and was approved as an athlete agent in Tennessee under Tennessee Code Annotated section 49-7-2101, *et seq.* (the "Athlete Agent Reform Act of 2011" or "Act").[2] In June 2014, following his approval as an athlete agent in Tennessee, Mr. Sloane represented Justus in the 2014 MLB professional draft. The Cleveland Indians drafted Justus in the first round and paid him a $1.6 million dollar signing bonus. Thereafter, Justus paid Mr. Sloane $48,000.00. Mr. Sloane contends that Justus orally agreed to pay him five percent of his signing bonus, which is $80,000.00, not the $48,000.00 amount.

In October 2014, Mr. Sloane sued Justus in Arizona state court alleging that Justus breached his agreement to pay Mr. Sloane five percent of the signing bonus. During the lawsuit, Justus discovered that Mr. Sloane was not registered as an athlete agent in

---

[2] We note that the version of the Act cited in this Opinion is that which was in effect at the time Mr. Sloane was charged with these violations. The Act has since been amended.

Tennessee when he first initiated contact with him. Justus' current professional sports agent, Mr. Bo McKinnis, reported this information to Mr. Kevin Rayburn, who at the time was the assistant director of the Business Services Division who oversaw administration of the Act.[3]

On September 30, 2016, Appellee issued an Order and Assessment of Civil Penalties against Mr. Sloane related to his representation of Justus and his violations of the Act.[4] Appellee assessed: (1) a $10,000.00 penalty for Mr. Sloane initiating contact with Justus prior to Mr. Sloane's registration as an athlete agent in violation of Tennessee Code Annotated section 49-7-2114(b)(1); and (2) a $15,000.00 penalty for Mr. Sloane acting as an athlete agent prior to Mr. Sloane's registration as an athlete agent in violation of Tennessee Code Annotated sections 49-7-2104(a) and 49-7-2114(b)(5). *See also* Tenn. Code Ann. § 49-7-2135(b)(5). Mr. Sloane requested a hearing to dispute the penalties.

On November 30, 2017, Administrative Law Judge ("ALJ") Elizabeth Cambron held a contested hearing concerning Mr. Sloane's alleged violations of the Act. Mr. Sloane proceeded *pro se*. Both Mr. Sloane and the Business Services Division were given the opportunity to present witnesses and exhibits. Appellee called two witnesses: (1) Mr. Nathan Burton, the director of the Business Services Division; and (2) Mr. Travis Sheffield. Mr. Sloane testified as the only witness for his side. On February 28, 2018, ALJ Cambron entered an initial order finding, *inter alia*, that Mr. Sloane violated the Act when he initiated contact with Justus and represented a student athlete prior to registering as an athlete agent with the Business Services Division. However, ALJ Cambron reduced the two penalties to $5,000.00 each and assessed $740.00 in investigatory costs against Mr. Sloane. Mr. Sloane filed a petition for reconsideration of the initial order, which the ALJ denied.

On April 25, 2018, Mr. Sloane filed a petition for judicial review in the Chancery Court of Davidson County ("trial court"). While it is not explicitly stated in his petition, it appears Mr. Sloane argued that: (1) the Business Services Division "selectively" and "unlawfully" enforced the Act against him; (2) the ALJ violated his Due Process rights when she denied his motions to compel compliance with several subpoenas; and (3) the penalties that Appellee/ ALJ assessed against him were excessive and unreasonable.[5] On

---

[3] The Arizona state court granted Justus' motion to dismiss the lawsuit on the grounds that Mr. Sloane was not a registered athlete agent when he entered into the oral agreement with Justus, thus rendering the contract void *ab initio*.

[4] Appellee originally assessed penalties against Mr. Sloane based on his contact with Jordan as well, but it later withdrew its charges related to Jordan. Therefore, we are only concerned with Mr. Sloane's contact with Justus.

[5] In our record, a page from Mr. Sloane's petition for judicial review is missing. The third page of his petition ends with paragraph thirteen, and the fourth page begins with lines that appear to be running over from paragraph seventeen.

- 4 -

November 27, 2018, the trial court held a final hearing. By order of December 29, 2018, the trial court affirmed the ALJ's order, concluded that Mr. Sloane violated two provisions of the Act, and upheld the ALJ's imposition of $10,000.00 in fines and $740.00 in investigatory costs. Mr. Sloane appeals.

## II. Issues

Mr. Sloane raises four issues on appeal, which we state as follows:

1. Whether the ALJ erred when she denied Mr. Sloane's motions to compel.

2. Whether Justus Sheffield was a student athlete under the Athlete Agent Reform Act of 2011 when Mr. Sloane initially contacted the Sheffield family.

3. Whether Appellee abused its discretion and conducted selective, unlawful enforcement of the Act by rendering arbitrary and capricious fines against Mr. Sloane.

4. Whether the civil penalties and investigatory costs assessed to Mr. Sloane violated the Eight Amendment of the United States Constitution and Tennessee Constitution Article I, Section 16.

## III. Standard of Review

When the Tennessee Secretary of State assesses a civil penalty against an athlete agent, "[a]ny hearing on the imposition of any fine . . . shall be in accordance with the Uniform Administrative Procedures Act . . . ." Tenn. Code Ann. § 49-7-2117; Tenn. Code Ann. § 49-7-2138. The UAPA provides, in pertinent part:

(a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. . . .

***

(b)(1)(A) Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute. Such petition shall be filed within sixty (60) days after the entry of the agency's final order thereon.

***

(h) The court may affirm the decision of the agency or remand the case for

further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

> (1) In violation of the of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> > (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
>
> (i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322. This Court explained the standard set forth in Tennessee Code Annotated section 4-5-322 in *City of Memphis*, to-wit:

> Upon confirming that an agency has employed the proper legal principles in the case under review, this Court must then consider the disputed factual findings and address whether the agency had a reasonably sound basis for making those findings. *See McEwen v. Tenn. Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Like the trial court, this Court applies the substantial and material evidence standard in reviewing the agency's findings of fact. *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion" and to furnish a reasonably sound basis for the decision under consideration. *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-11 (Tenn. Ct. App. 1993)); *Dickson v. City*

*of Memphis Civil Serv. Comm'n*, 194 S.W.3d 457, 464 (Tenn. Ct. App. 2005); *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005); *Bobbitt*, 115 S.W.3d at 510.

As directed by the statute, we take into account whatever in the record fairly detracts from the weight of the evidence, but we may not substitute our own judgment on questions of fact by re-weighing the evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B). When the agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight. *Pruitt*, 2005 WL 2043542, at *7. Moreover, the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result. *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001). Rather, we may reject an administrative determination only if a reasonable person would necessarily arrive at a different conclusion based on the evidence. *Id.*

Likewise, Tennessee Code Annotated Section 4-5-322(h)(4) permits a reviewing court to modify or reverse an administrative decision if it is "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tenn. Code Ann. § 4-5-322(h)(4). A decision unsupported by substantial and material evidence is arbitrary and capricious. *City of Memphis*, 216 S.W.3d at 315. Yet, a clear error of judgment can also render a decision arbitrary and capricious notwithstanding adequate evidentiary support. *Id.* at 316. A decision is arbitrary or capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* (quoting *Jackson Mobilphone*, 876 S.W.2d at 110-11).

*City of Memphis v. Civil Serv. Comm'n of Memphis*, 238 S.W.3d 238, 243 (Tenn. Ct. App. 2007).

While we are cognizant that Mr. Sloane is representing himself in this appeal, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that

represented parties are expected to observe." ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003); ***Edmundson v. Pratt***, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); ***Kaylor v. Bradley***, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

Tennessee Rule of Appellate Procedure 27(a) mandates that "[t]he brief of the appellant shall contain under appropriate headings and in the order here indicated:"

(1) A table of contents, with references to the pages in the brief;

(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a). Additionally, Tennessee Court of Appeals Rule 6 provides that a

(a) [w]ritten argument in regard to each issue on appeal shall contain:

(1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

(2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

(3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. Ct. App. R. 6(a) and (b).

Mr. Sloane's appellate brief fails to comply with many of the foregoing requirements. Specifically, he fails to cite to precise page numbers or sections of the record to support his contentions. Tenn. Ct. App. R. 6(a)(4) and (b). Mr. Sloane also fails to refer to the pages in his brief where his authorities are cited. Tenn. R. App. P. 27(a)(2). Finally, as will be discussed, *infra*, many of Mr. Sloane's arguments do not include authority to support his arguments. Tenn. R. App. P. 27(a)(7).

"'Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.'" *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (quoting *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000)); *see also Tellico Village Property Owners Ass'n, Inc. v. Health Solutions, LLC*, No. E2012-00101-COA-R3-CV, 2013 WL 362815, at *3 (Tenn. Ct. App. Jan. 30, 2013) (no perm. app. filed ) (quoting *Branum v. Akins*, 978 S.W.2d 554, 557 n.2 (Tenn. Ct. App. 1998)) ("'Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.'").

Furthermore, "the Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." **Bean**, 40 S.W.3d at 54-55 (citing **Crowe v. Birmingham & N.W. Ry. Co.**, 1 S.W.2d 781 (Tenn. 1928)).

Although Mr. Sloane failed to comply with the rules concerning the content of his appellate brief, because this Court's review is limited to reviewing the administrative record, we conclude that Mr. Sloane's procedural failures are not fatal to his appeal. Accordingly, we will proceed to adjudicate this appeal on the merits while cautioning future litigants to ensure proper compliance with the applicable procedural rules.

## IV. Analysis

### A. Whether Justus Sheffield was a "Student Athlete"

Under the Act, an "athlete agent" is defined as

(2)(A) . . . an individual who enters into an agency contract with a student athlete or, directly or indirectly, recruits or solicits a student athlete to enter into an agency contract, or, for compensation or for anything of value, procures, offers, promises, negotiates, or attempts to procure, offer, promise, or negotiate on behalf of a student athlete, employment with a professional sports team or organization as a professional athlete or enrollment at any college, university, community or junior college that offers an athletic scholarship to the student athlete;

Tenn. Code Ann. § 49-7-2102(2)(A). A "student athlete" is defined as

(12)(A) . . . an individual who engages in, is eligible to engage in or may be eligible in the future to engage in any intercollegiate sport;

Tenn. Code Ann. § 49-7-2102(12)(A).

As it concerns this appeal, the Act is violated only when an athlete agent, who is not registered as such with the State of Tennessee, recruits or solicits a student athlete to enter into an agency contract. *See* Tenn. Code Ann. § 49-7-2102(2)(A). If an athlete agent recruits or solicits an individual who is not a student athlete then the Act does not apply. During the hearing before the ALJ, Mr. Sloane stipulated that he violated the Act, thereby implicitly admitting that Justus was a student athlete when he initiated contact with the Sheffield family and when he entered into an oral contract with Justus.

During his testimony before the ALJ, Mr. Sloane read from sections of the Uniform Athlete Agent Act, including:

- 10 -

MR. SLOANE:  An athlete agent may not intentionally initiate contact with a student athlete unless registered under this act.

This section of the Uniform Athlete Agent Act reads very similar to the Act in Tennessee, to-wit:

(b) An athlete agent shall not:

(1) Initiate contact with a student athlete, or a student athlete's family and friends, unless registered under this part;

Tenn. Code Ann. § 49-7-2114(b)(1); Tenn. Code Ann. § 49-7-2135(b)(1).  Mr. Sloane followed his reading of this section of the Uniform Athlete Agent Act with the statement, "Now, the fact shows that I did [do this].  I was one of those people that was not aware of [the law in Tennessee]."  Mr. Sloane further admitted:

MR. SLOANE:  Okay.  I did not register.  That's a fact.

***

MR. SLOANE:  Your Honor, initial notions of fair play and equal justice are what motivated me to stipulate that I had not registered at the time I first contacted the Sheffields.

Mr. Sloane's testimony clearly demonstrates his knowledge that: (1) the Act applied to this situation; and (2) he violated the Act when he initiated contact with the Sheffield family prior to registering as an athlete agent in Tennessee.  By admitting that he violated the Act during his testimony before the ALJ, Mr. Sloane implicitly concedes that Justus was a student athlete, and his argument now that Justus was not an eligible student athlete under the Act is completely without merit.

Mr. Sloane also takes issue with some of the ALJ's rulings concerning pre-trial discovery.  Tennessee Code Annotated section 4-5-311(a) provides that "[t]he administrative judge . . . , at the request of any party, shall issue subpoenas, effect discovery, and issue protective orders, in accordance with the Tennessee Rules of Civil Procedure . . . .  The administrative judge . . . shall decide any objection relating to discovery under this chapter or the Tennessee Rules of Civil Procedure."  Tenn. Code Ann. § 4-5-311.  At the request of Mr. Sloane, the ALJ issued several subpoenas to baseball teams and individuals involved in professional baseball.  Mr. Sloane received voluntary responses to some of the subpoenas but filed motions to compel concerning the subpoenas to which he received no response.  Mr. Sloane argues that the ALJ erred when she denied his motions to compel, and he contends that the information he sought could

- 11 -

have proven that Justus was not a student athlete when Mr. Sloane contacted and represented him.[6]

Three of the four motions to compel concerned individuals employed by three professional baseball teams: the Cleveland Indians, the San Diego Padres, and the New York Mets. In reviewing the motions to compel, it is clear that Mr. Sloane was not actually seeking information from these individuals, but was instead seeking information from the baseball organization for which each individual worked. In her order denying these three motions to compel, the ALJ found that none of the three baseball teams maintained offices in Tennessee, and she did not have jurisdiction over them.

Mr. Sloane's fourth motion to compel concerned Mr. McKinnis. In denying this motion, the ALJ found that

> Mr. McKinnis acted as an agent for Jordan and Justus Sheffield (the young men Mr. Sloane allegedly represented while not registered to do so) after the incidents that gave rise to this litigation. The issue in this proceeding is whether Mr. Sloane represented student athletes without being registered to do so as required by Tenn. Code Ann. § 49-7-2104. Mr. Sloane has been unable to explain how the requested documents are relevant or may lead to the discovery of relevant evidence in this proceeding.

"Decisions regarding discovery 'rest within the sound discretion of the trial court' and 'will not be reversed on appeal unless a clear abuse of discretion is demonstrated.' **Benton v. Snyder**, 825 S.W.2d 409, 416 (Tenn. 1992)." **Phan v. Tennessee Dep't of Commerce & Ins.**, No. M2016-00612-COA-R3-CV, 2017 WL 829817, at *11 (Tenn. Ct. App. Mar. 2, 2017) (applying discovery rules to administrative law cases before an ALJ). Further, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i); *see also* **Phan**, 2017 WL 829817, at *11. We agree with the trial court's conclusion that the ALJ's denials of Mr. Sloane's motions to compel do not evidence a lack of due process for Mr. Sloane because he "either did not demonstrate entitlement to the requested documents or did not use a proper process to obtain them . . . ." Additionally, assuming *arguendo* that the ALJ's decision to deny the motions to compel was error, the decision did not affect the merits of the case. As discussed above, during the ALJ hearing, Mr. Sloane admitted that he violated the Act. No discovery obtained by Mr. Sloane, pursuant to his motions to compel, would likely trump his admission that his conduct violated the Act.

---

[6] We note that Mr. Sloane's appellate brief fails to mention the names of the individuals and/or baseball teams for which he filed the motions to compel.

## B. Secretary of State's Enforcement of the Act

Mr. Sloane contends that Mr. McKinnis manipulated Appellee into applying the Act in a selective and biased manner. He further argues that Appellee "abused its discretion and exercised its discretion in an unwarranted manner" when it assessed civil penalties against him for his violations of the Act. "Persons making selective enforcement claims have a heavy burden to overcome because the courts, in recognition of the doctrine of separation of powers, presume that public officials have discharged their duties in good faith, *see **Williams v. American Plan Corp.***, 392 S.W.2d 920, 923 (Tenn. 1965), and in accordance with the law." ***421 Corp. v. Metro. Gov't of Nashville & Davidson Cty.***, 36 S.W.3d 469, 480 (Tenn. Ct. App. 2000) (citing ***Reeder v. Holt***, 418 S.W.2d 249, 252 (Tenn. 1967)). "A selective enforcement claim requires a party to show '(1) the government has singled out the plaintiff for adverse regulatory or enforcement action while others engaging in similar activity have not been subject to the same type of action and (2) that the decision to prosecute them rests on an impermissible consideration or purpose.'" ***Cty. of Shelby v. Tompkins***, 241 S.W.3d 500, 510 (Tenn. Ct. App. 2007) (citing ***421 Corp.***, 36 S.W.3d at 480); *see also **Nat'l Loans, Inc. v. Tennessee Dep't of Fin. Institutions***, No. 01A01-9506-CH-00241, 1997 WL 194992, at *5 (Tenn. Ct. App. Apr. 23, 1997).

Here, Mr. Sloane fails to provide any evidence in support of his position that Appellee selectively enforced the Act against him. *See* Tenn. R. App. P. 27(a)(7). Indeed, the trial court found that

> [t]here [was] no evidence in the Record that the State ha[d] utilized a selective enforcement process regarding the Act, or that [Mr.] Sloane was held to a standard different from others.

We agree with the trial court. Despite his argument that other athlete agents engaged in the same conduct were not prosecuted, Mr. Sloane presents no evidence to support his contention. ***Tompkins***, 241 S.W.3d at 510. Further, Mr. Sloane failed to show that Appellee's decision to prosecute him rested on an impermissible consideration or purpose. ***Tompkins***, 241 S.W.3d at 510 (citing ***421 Corp.***, 36 S.W.3d at 480); *see also **Nat'l Loans, Inc.***, 1997 WL 194992, at *5. In the absence of evidence of specific instances of selective enforcement, Mr. Sloane's protestations provide no proof to support his allegations that he was treated differently than other similarly situated athlete agents.

## C. Civil Penalties and Investigatory Costs

Mr. Sloane argues that the civil penalties and investigatory costs assessed against him violate the Eighth Amendment of the United States Constitution and Article I, Section 16 of the Tennessee Constitution. As we have explained before,

. . . with regard to a penalty imposed by an agency, our review is limited to whether the remedy is "'unwarranted in law' or 'without justification in fact.'" ***Robertson v. Tenn. Bd. of Soc. Worker Certification & Licensure***, 227 S.W.3d 7, 14 (Tenn. 2007) (quoting ***Mosley v. Tenn. Dep't of Commerce & Ins.***, 167 S.W.3d 308, 321 (Tenn. Ct. App. 2004)). Further, the "[c]ourts are not to substitute their judgment as to an appropriate sanction for that of the agency responsible for enforcement," as "'[t]he appropriate remedy is particularly within the discretion of the [agency].'" ***City Towing & Transp., Inc. v. Transp. Licensing Comm'n of the Metro. Gov't of Nashville***, No. M2007-01246-COA-R3-CV, 2009 WL 276761, at *4 (Tenn. Ct. App. Feb. 3, 2009) (quoting ***Robertson***, 227 S.W.3d at 13). Thus, "[s]o long as the sanctions imposed by an agency are within the scope of its statutory authority, the reviewing court should not substitute its judgment for that of the agency, unless the penalty is so clearly disproportionate to the offense and completely inequitable in light of the surrounding circumstances as to be shocking to the conscience of the Court." ***Overton v. Bd. of Exam'rs in Psychology***, No. 01-A-01-9603-CH-00098, 1996 WL 656104, at *2 (Tenn. Ct. App. 1996) (quoting 73A Corpus Juris Secondum, *Public Administrative Law and Procedure* § 223 (1983)).

***Howell v. Metro. Sexuality Oriented Bus. Licensing Bd.***, 466 S.W.3d 88, 110-11 (Tenn. Ct. App. 2014). At the time Mr. Sloane was charged with violating the Act, it provided that "[t]he secretary of state [could] assess a civil penalty against an athlete agent not to exceed twenty-five thousand dollars ($25,000) for a violation of [the Act]." Tenn. Code Ann. § 49-7-2117; Tenn. Code Ann. § 49-7-2138; *see also* Tenn. Code Ann. § 49-7-2142.[7] Appellee originally assessed Mr. Sloane: (1) a $10,000.00 penalty because Mr. Sloane initiated contact with Justus prior to Mr. Sloane's registration as an athlete agent; and (2) a $15,000.00 penalty because Mr. Sloane acted as Justus's agent before registering as an athlete agent. The ALJ reduced Mr. Sloane's penalties to $5,000.00 for each violation, and assessed $740.00 in investigatory costs.

The record shows that, at the time of his violations of the Act in Tennessee, Mr. Sloane was a registered athlete agent in Florida and Alabama, which demonstrates that he was aware that some states required athlete agents to register with the secretary of state. Concerning this fact, the ALJ found that

> Mr. Sloane waited until April 2014, shortly before the June 2014 Major League Baseball draft, when he knew he would likely be negotiating a

---

[7] We note that the current version of the Act allows the secretary of state to assess a civil penalty of up to $50,000.00 against an athlete agent for each violation of the Act. *See* Tenn. Code Ann. § 49-7-2117.

contract on behalf of Justus Sheffield, to register as an athlete agent with the Tennessee Secretary of State. The facts in the record show that Mr. Sloane failed to exercise due diligence in determining whether Tennessee had a registration requirement for athlete agents and took a calculated risk that he would not get caught in his representation of Justus Sheffield from the time he first contacted the Sheffield family in 2012 until he registered on April 10, 2014.

However, the ALJ also found that "a civil penalty of $25,000.00, as proposed by [Appellee] would be excessive under the facts of this case . . ." because "Mr. Sloane's actions resulted in only two violations of the Act . . .[,]" and "Mr. Sloane did come into compliance prior to negotiating Justus Sheffield's major league contract."

We conclude that the record supports the penalties imposed against Mr. Sloane. The penalties were not "unwarranted in law" or "without justification in fact." **Howell**, 466 S.W.3d at 110 (citing **Robertson**, 227 S.W.3d at 14). As the ALJ found, "Mr. Sloane failed to exercise due diligence in determining whether Tennessee had a registration requirement for athlete agents and took a calculated risk that he would not get caught in his representation of Justus Sheffield from the time he first contacted the Sheffield family in 2012 until he registered on April 10, 2014." Additionally, the penalties imposed were within the discretion of the agency, and the sanctions of $10,000.00 in fines and $740.00 in investigatory costs were well within the scope of the Act as they did not exceed $25,000.00 per violation. *See* Tenn. Code Ann. § 49-7-2117; Tenn. Code Ann. § 49-7-2138; Tenn. Code Ann. § 49-7-2142; **Howell**, 466 S.W.3d at 110-11. Accordingly, we agree with the trial court that there is no basis to disturb the ALJ's determination that the $10,000.00 fines and $740.00 in investigatory costs were warranted.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, David M. Sloane, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE